## ZULE *vs.* ZULE.

Where a *lessor* puts an end to a *term* intermediate the days specified in the lease for the payment of rent, he is not entitled to claim *an apportionment of rent* and recover the portion accrued since the last rent-day, unless there be a provision in the lease allowing a demand *pro rata.*

Where a lessor by deed demises a farm with the farming utensils and stock upon it for a specified term, reserving a right to *sell* the farm before the expiration of the term, and he exercises the right, it is questionable whether he can demand a return of the utensils and stock previous to the expiration of the term mentioned in the lease ; but if he may demand such return, he cannot bring an action upon an *implied covenant* to do so, but must resort to the action of *trover* or *replevin.*

APPORTIONMENT of rent. The plaintiff declared in *covenant* for that on the 1st February, 1838, an indenture of lease was executed by him and the defendant, whereby he *demised* to the defendant a certain farm together with the use of all the farming utensils and stock, (as aforesaid appraised by ·the appraisers in 1832) for the term of *five years,* from 1st April, 1838, subject to an annual rent of $100, to be paid semi-annually. It was further alleged *in the declaration that the plaintiff *reserved* [ *77 ] *the right to sell* the whole or any part of the described premises at any time previous to the expiration of the lease on certain conditions ; that the defendant entered and remained in possession *up to the time of the sale* of the premises by the plaintiff, in the month of June or July, 1839 ; that $100 rent became due on the 1st April, 1839, and *still remains due ;* and also that on 7th July, 1839, there was due on the lease the rent which accrued from 1st April, 1839, up to that time, *according to the proportion* that the time aforesaid bore to one year, being about *twenty-seven dollars,* which also remained unpaid. It was then averred, that by reason of the sale of the farm on the 7th July, the lease terminated on that day, and that the defendant became liable to pay *the value of the farming utensils and stock,* appraised at $160, in consequence of his *refusal* to return the same upon *demand.* The breach alleged is the non-payment of the rent, and the omission to return the farming utensils and stock. There is no allegation in the declaration that the defendant *covenanted* to return the farming utensils and stock. The cause was heard by *referees,* who made a report in favor of the

*plaintiff.* The declaration was entitled generally of July term, 1839, and demanded rent up to the *seventh* day of July, which was subsequent to the *first day* of the July term. It however appeared by an *affidavit* annexed to the papers presented to the court by the defendant's attorney, that the suit was in fact commenced in *August*, 1839. The defendant moved in arrest of judgment.

*D. Cady*, for the defendants.

*M. T. Reynolds*, for the plaintiff.

*By the Court*, COWEN, J. The suit appears by the memorandum, to have been commenced in July term, 1839, and the declaration claims rent to the *seventh* day of that month. The memorandum being general of that term relates to the first day, which preceded the seventh. This would [ *78 ] be a *fatal objection in arrest on a general report, were it not for its appearing from Mr. Frothingham's affidavit that the suit was in truth commenced late as August, 1839. We might be warranted, therefore, in allowing the memorandum to be amended, and made special, so as to state the true time. That, we ought to allow according to *Thomas* v. *Leonard*, 11 Wendell, 53 ; and *Soper* v. *Soper*, 5 *id*. 112. *Tebbetts* v. *Dowd*, 23 *id*. 379.

But can the rent be apportioned ? There is no covenant providing for apportionment ; and the current half year's rent did not fall due, by the terms of the lease, till the 1st of October. Intermediate the beginning of the year and that time, the plaintiff put an end to the term. Suppose the provision had been that he might enter when he pleased ; could he have selected his own time and thus worked an apportionment of the rent ? Even where the tenancy was determined by the act of God, as where the lessor was tenant for life and died intermediate the rent days, the rent could not be apportioned. Hence the §statutes, 11 *Geo.* 2, *ch.* 19 : and 1 *R. S. of* 1813, 443, § 27 ; and 1 *R. S.* 738, 2*d. ed.* § 22. *Vide Viner's Abr.* Rent *(H. a)*, *pl.* 1, 2, 3 ; 2 *Eq. Case. Abr.* 704, 5. *Rent* (*A*). The objection is stronger against the lessor, where he puts an end to the lease by his own act without necessity. It is enough to say however, that there is no special provision either in the lease or by statute, and without one or the other, rent can never be apportioned in respect to time. *Viner's Abr.* Rent, (*H. a*), *pl.* 1, 2. *Co. Litt.* 155, *a. Wentworth* v. *Abraham, Hetl.* 53 ; *Litt. R.* 61, *S. C.*, is in point. There the declaration was on a promise to pay 30*s.* rent yearly so long as the tenant should enjoy. The declaration shewed an enjoyment for one year and an half; and claimed 45*s.* ; for which the plaintiff had a verdict. But the judgment was arrested. Richardson, J. said the promise is not *secundum ratum* ; for then he might divide the rent. He added, if a lease be made for two years or at will, paying annually at Michaelmas 30*s.*,

and the lease is determined after half of the year, although by the lessee himself, no rent is due. It is the same of all debts. Thus where the *defendant's testator retained the plaintiff in service for one year at [ *79 ] a salary of £100, but died at the end of three quarters of a year; the plaintiff declaring and having recovered for £75, the judgment was reversed. *Countess of Plymouth* v. *Throgmorton*, 1 *Salk.* 65. All the books I have cited repeat and adopt the maxim *annua nec debitum judex non seperat*. To this there are many cases; but it is enough to refer to *Clun's case* 10 *Rep.* 127,where the queston is treated by *Coke*, and is of course exhausted. It is not necesary to deny that, under the modern notions of the rescission of contracts, and implied assumpsit for use and occupation, work &c. actions might now be brought in the cases cited; nor that they might when Coke, Hetley and Littleton were engaged in reporting. But an implied assumpsit is general, and supposes the special contract out of the way under circumstances which raise an equitable demand. If you declare specially, as you generally must in covenant or debt on a specialty, the claim is still indivisible as to time. The general maxim is well illustrated by two more cases which I will mention, though they do not respect time. A man covenanted to allow his clerk so much for every quire of paper which he should copy out. The breach assigned was, that he copied out a bill which extended over five quires and a half, claiming for the whole and alleging that the defendant had not paid. The plaintiff recovering a verdict for the whole, judgment was arrested because there was no mention in the contract of allowing for the half. *Needler* v. *Guest*, *Sty.* 12; *Viner's Abr. Apportionment*, *(A)*, *pl.* 23, *S. C. differently stated, but S. P. resolved.* At *pl.* 26, of the same letter, Mr. Viner mentions a promise to pay £2 a ton for iron; and a declaration for one ton and a half, with a verdict for the plaintiff. This he says is cited in *Sid.* 225, *pl.* 19, as adjudged to be ill; but he adds in the margin that the same case is reported in *Yelv.* 134, *Bettisworth* v. *Campion*. But there the agreement was laid to pay *secundum ratum* of 40s. per ton, and therefore the declaration being so, it was adjudged for the plaintiff that the defendant ought to pay for odd pounds, &c. over and above the ton. No one would doubt at this *day that on a general indebita- [ *80 ] tus assumpsit for all the work or all the iron mentioned in the two last-cases, the plaintiff might recover, though no *pro rata* were mentioned; but that would be on the new and implied contract resulting from the performance on one side and acceptance on the other. Mr. Viner complains that he suffered injustice at the hands of a jury under this loose modern notion, in an action against him by a servant, who contracted for a year, but left him before the time ran out. Sir John Strange argued against him at nisi prius, and called upon him to publish the case in his abridgement, which was then in the press. He wrote to Sir John for a report of the

fact of the case, but failed to obtain it, he thought, because the advocate, on searching, became diffident of being able to support it on authority. See the letter and history of this matter, *Viner's Abr. Apportionment*, (*A*), pl. 28. Of course that case is not law, because the servant was in fault; otherwise had the fault been with Mr. Viner. And yet even in such case the servant could not have recovered a portion on the special contract. He must have waited his time, and gone for his damages on the whole covenant, alleging a tender and offer to perform. In such case the damages might have been apportioned in amount for the idle time. In the case at bar, there is no fault alleged as lying on the side of the defendant, nor could there be any. The nature of the act which put an end to the term during the current half year shews that it lay with the plaintiff himself ; and there being no *pro rata* clause, the ancient cases apply in all the force of authority, and with more reason than can be found for some of them. The rule was held to be the same both at law and in equity, on a bill to apportion rent, in *Jenner* v. *Morgan*, 1 *P. Wms.* 392 ; though there was a case to the contrary, *Meely* and *Webber*, a note of which is given in 2 *Eq. Cas. Abr.* 704, *Rent*, (*A*), thus : A parson leased his tithes at a rent payable yearly, and died within the year, by which his estate was gone ; and the court of exchequer, acting on the equity side, apportioned the rent. Another like case in the exchequer is there mentioned looking strongly the same way. But these very cases conceded the *rule at law to be otherwise ; going into equity for that [ *81 ] sole reason. The statute of Geo. II, before cited, gives an action for apportionment, under such and the like circumstances.

But however it may be as to the rent, the plaintiff has also assigned what he calls a breach of covenant in the same count, *for not restoring the personal property*. Now it is quite questionable, to say the least, whether the sale of the land put an end to the term in the utensils and stock. But independently of that difficulty, which seems to be insurmountable, the declaration sets out no covenant, nor will the law imply one from the lease which is recited. The remedy of the bailor, (for the lessor is no more than a bailor,) is to demand the restoration ; and if that be refused, bring trover, detinue, or replevin under the late statute, as he would bring ejectment where the tenant holds over after a demise of land has expired. The act of holding over is, in either case, a wrong, and can be redressed by an action *ex delicto* only. It is not necessary to say, whether, on a bailment by simple contract, for a certain time, the law may not imply a promise to re-deliver after the term ended. The bailment in question is by specialty ; in respect to which Buller lays down the rule thus : " If a man make a lease of goods by indenture, which are evicted within the term, yet the lessee shall not have covenant ; for the law does not create any covenant upon such personal things, *vide* 1 *Roll. Abr.* 519, *Covenant* (*F.*) *S. P.;* and therefore in the case of

a lease of a house with goods, it is usual to make a schedule of them, and have a covenant from the lessee to re-deliver them at the end of the term; for otherwise, the lessor can only have trover or detinue." *Bull. N. P.* 157, *Lond. ed.* 1788. *Bedford* v. *Hall, Ow.* 104, 36 *Eliz.*, seems contra, and is so put by Roll, *ut supra nom. Bedford and Bull*, 37 *Eliz.* But I quote a fifth edition by Buller himself; and his distinction is taken in several of the more modern books which treat of covenant; I presume in all. *Platt on Covenants*, 49. *Bac. Abr. Covenant (B.)* The concurrence of Roll and Buller, however, is sufficient to overcome the loose and obscure report of Owen. Thus, *the plaintiff will be seen to claim    [ *82 ] by his declaration two several things beyond what his contract can possibly carry : first, a portion of rent unapportionable ; and secondly, damages for breach of a supposed covenant which has no existence. On both of these the report gives him something ; for the averments claiming them are substantial and material. It would be otherwise, I think, if they were merely formal, as in *Arnold* v. *Arnold*, 3 *Bing. New Cas.* 81, and *Tebbetts* v. *Dowd, before cited.*

The judgment must, therefore, be arrested.