## CARTER vs. BURR.

Where a lessee has been evicted from a portion of the privileges granted by the lease, by a paramount title in a stranger, he is discharged from the rent *pro tanto*, and is entitled to an apportionment, by which rent shall be paid only in respect to the residue.

But in an action for rent, the lessee is not entitled to recoupe the value of the lease over and above the rent, nor for rents he might have realized, or for special damages incurred by reason of being evicted from a portion of the privileges granted.

A lease in fee, or in perpetuity, is a " conveyance of real estate " within the provisions of the statute forbidding the implication of covenants; and if it contains no covenants of seizin, warranty or quiet enjoyment, none can be implied.

THIS action was brought to recover rent claimed to be due under and by virtue of a lease in fee, bearing date the 19th day of January, 1842, and made and executed by the plaintiff to and with the defendant and one Archibald Hoyt. The rent accrued between the 1st day of August, 1850, and the first day of February, 1858. The premises were situated in the city of Troy. The defendant claimed that the plaintiff had broken various covenants in the lease, by reason of which the defendant had sustained damages to a greater amount than the rent claimed to be due.

The cause, together with another suit against Archibald Hoyt for his share of the rent and involving the same questions, were referred to Charles F. Tabor, Esq., as sole referee. Upon the trial of this case it appeared that the plaintiff made the demise in question to Archibald Hoyt and Oliver Burr, and therein agreed to erect a building of given dimensions, and also a water wheel to be used in connection with the building, and to be of good materials and of sufficient strength for the use of the power obtained from the natural stream upon the wheel. He also agreed to lay wood trunks sufficient to conduct the natural stream which then ran into the pond used by him, as a reservoir to said wheel, and to do all that was necessary to carry said stream of water to the top of the wheel. The building was to be erected on the

west side of the stone dam, on the Hollow road leading to the Troy poor-house, and to be completed, with water wheel, on or before May 15, 1842. The plaintiff granted, demised and leased unto Burr and Hoyt, and their assigns, all of the building so to be erected, and the water wheel, and the natural stream of water, and certain land owned by the plaintiff, with the right to erect on the premises such buildings as might be necessary for making lampblack and boiling oil, and for storehouses; the building for making lampblack and boiling oil to be situated at least thirty feet from the main building, "for the term of five years from the 1st day of April next, or from such time as the premises shall be ready for use, with the express understanding and agreement between the parties aforesaid, that this lease shall be a perpetual lease, subject to the following proviso:" and that was that at the expiration of five years, or at any time thereafter, on one year's notice in writing, the lessees might surrender the premises and be thereafter absolved from all its conditions. For the first year the lessees were to pay $240 a year, payable quarterly; thereafter Burr was to pay $120, and Hoyt $120 per annum. It was further provided that Hoyt was to occupy all of the building above the first story, and use one-half of the water power; and Burr was to use the remainder of the building and the parcel of land, and one-half the water power. It was further agreed that the plaintiff should make all such repairs on the building and water wheel, and shaft, as should become necessary from natural wear and decay. If they should become injured by the fault of the lessees, they were to repair the same. There were other provisions in the lease not material to the questions involved.

The defendant claimed that the plaintiff did not, after the 1st of May, 1850, furnish to the lessees the use of the water mentioned in the lease, whereby they were greatly obstructed in their business, and suffered damage to a large amount.

The plaintiff made the erections and improvements as

provided in the lease.   He also laid the wood trunk, and did all that was necessary to conduct the stream of water on to the top of the wheel, as therein provided.   The trunk was about 150 feet in length and was laid in the highway, on the northerly side, until it crossed the same to the southerly side nearly opposite the demised premises, a greater part of it being on the northerly side.

The defendant under the clause in the lease entitling the lessees to make erections and improvements upon the demised premises, erected a building for the purpose of burning lamp-black, &c., which cost near $2000, for use in connection with the water power, the value of which would be diminished if deprived of the water.   The defendant and Archibald Hoyt, the other lessee, went into the occupation of the premises under the lease ; the defendant occupying the lower and Hoyt the upper part of the building erected by the plaintiff, the defendant for the manufacture of printing ink and principally black ink, and Hoyt for the manufacture of India rubber cloth.   The water power provided for in the lease was essential to the defendant, in said business.

In March, 1849, a Mrs. Haight, who was the owner of the land on the north side of the highway, claiming that the wood trunk passed over her land, shut the stream of water off from passing through the trunk.   The plaintiff disputed her right to do so, and refused to make any arrangement with her. The business of the defendant by this means was wholly or partially interrupted, until on or about the 23d of April, 1849, during which time Mrs. Haight refused to grant any use of the water through the trunk, but at or about this time the defendant and Hoyt hired the water of her for $50 a year, but she refused to lease for any definite period.

In the early part of the fall of 1850 the defendant also occupied, in the prosecution of his business, a part of a new building built by Hoyt, since which time he has not used the water passing through the trunk.   In the fall of 1851 he hired another water power of one Tompkins and removed

his machinery there, and since that time has manufactured his black ink at this place.  He has however used the building erected by the plaintiff for some purposes connected with the business.  So much of the stream as did not pass through the trunk ran into a reservoir of the plaintiff, and the defendant used water from it with the knowledge and assent of the plaintiff.   Although the value of the building erected by the plaintiff and of the other portion of the premises occupied by the defendant, without water, was depreciated, yet the lease was valuable to the defendant over and above the rent he was to pay the plaintiff.

The defendant gave evidence showing the expenses resulting by reason of the removal of the machinery for manufacturing ink to the power hired of Tompkins ; and also evidence of the amount expended in the spring of 1852, for repairs on the wheel and the floor of the building.  The evidence was conflicting, as to the capacity of the stream.  The defendant never surrendered or offered to surrender the demised premises to the plaintiff, but continued in the occupation of them during the time for which the rent was claimed.

The referee decided that the lease was a perpetual lease, and not a lease for years, and that it was a conveyance within the statute against implied covenants.  That the shutting off the water by Mrs. Haight was an eviction of the lessee from a portion of the demised premises by title paramount, and discharged the lessee from the rent *pro tanto,* and the defendant was entitled to an apportionment of the rent, and to an allowance of one-half of the repairs made by him and Hoyt, growing out of the failure of the plaintiff to repair. He also decided that the plaintiff was not bound to repair the trunk, and that the defendant was not entitled to recoupe the value of the lease over the rent ; or for rents he might have realized on underletting the premises ; or for loss of profits or cost of moving ; or for the decreased value of the building he put up on the demised premises, by reason of being evicted from the use of the water.

Carter *v.* Burr.

The referee reported in favor of the plaintiff, allowing $60 a year as a fair rent of the premises from which he was not evicted, including the water used from the plaintiff's reservoir, with interest quarter yearly, deducting one-half expended for repairs, and amounting ,to $603.16. Judgment was entered in favor of the plaintiff for the amount, and the defendant appealed to the general term.

*W. A. Beach,* for appellant and defendant.

*J. H. Reynolds,* for respondent and plaintiff.

*By the Court,* MILLER, J.   The principal question in this case arises in reference to the principle adopted by the referee in allowing damages to the defendant, by reason of his failure to enjoy the entire privileges granted by the lease.   The referee decided that the defendant was entitled to an apportionment of the rent of the demised premises in consequence of the eviction, and to costs of repairs made by the defendant growing out of the plaintiff's failure to repair.   He also held that the defendant was not entitled to recoupe the value of the lease over and above the rent, or for rents he might have realized, or for special damages incurred by reason of being evicted from the use of the water.

The defendant claims that even upon the principle established by the referee, he did not allow an abatement of the rent equal to the value of the use of the premises from which he was evicted, relatively to the value of the part he retained, assuming the rent reserved as the standard of value.   It is also contended that the principle of compensation adopted by the referee was .wrong, and that he erred in refusing to allow the increased value of the lease, over and above the rent, and the special damages proven which were the immediate and natural consequence of the eviction.

In an action by the vendor against the vendee, where there has been a failure of title, a vendee cannot recover from

the vendor the enhanced value of the premises. (*Baldwin*
v. *Munn*, (2 *Wend.* 405.) The extent of a grantor's respon-
sibility in such a case, under any and all the usual covenants
in a deed, is the purchase money with interest. (4 *Kent's
Com.* 476, 477. 5 *John.* 49. 12 *id.* 126. 12 *Wend.* 142.)

In *Kinney* v. *Watts*, (14 *Wend.* 41,) Justice Sutherland
says: "A lease, where no purchase money is paid by the
lessee, does not differ in principle in this respect from an
ordinary conveyance in fee for a valuable pecuniary consider-
ation. As the lessee has paid no purchase money he can
recover none back upon eviction; and in respect to the im-
provements which he has made upon the premises, and the
money expended upon them, he stands precisely upon the
same footing with the purchaser, who recovers nothing for
improvements or expenditures; nor can a lessee upon the
ordinary covenants for quiet enjoyment.

There are cases which hold that where the lessor fraudu-
lently or perversely refuses to give possession and when the
refusal does not result from his inability to give possession,
without fault on his part, the lessee may recover more than
the amount actually expended. (*See Giles* v. *O'Toole*, 4
*Barb.* 261; *Lawrence* v. *Wardwell*, 6 *Barb.* 423; *Driggs*
v. *Dwight*, 17 *Wend.* 71.) It will be noticed that in these
cases the lessee had the power to give possession, and refused
to do so, without any reasonable excuse.

In *Trull* v. *Granger*, (4 *Seld.* 115,) it was held that where
the lessor had leased and delivered possession of the premises
to another party, the original lessee was entitled to recover
the difference between the rent reserved and the value of the
premises as the *measure of damages*. Judge Gardner, in
delivering the opinion of the court in this case, recognized
a distinction between cases where the injury arose from the
wrongful act of third persons, and cases where the lessor
denied the right and refused to permit the lessee to occupy
in accordance with the terms of the lease.

In *Kelly* v. *Dutch Church of Schenectady*, (2 *Hill*, 105,)

Carter *v.* Burr.

which was an action on a covenant in a lease, it was decided that the lessee could recover nothing for improvements, rise in the value, &c. The rule in regard to a purchaser of real estate was held to apply. It is there said by Bronson, J.: "In case of eviction the rent ceases, and the lessee is relieved from a burden, which must be deemed equal to the benefit which he would have derived from the continued enjoyment of the property. Having lost nothing he can recover no damages. He is, however, *entitled to the cost he has been put to ;* and as he is answerable to the true owner for the mesne profits of the land for a period not exceeding six years, he may recover back the rent he has paid during that time, with the interest thereon."

In *Noyes* v. *Anderson*, (1 *Duer*, 342;) in an action to recover damages for the eviction of the lessee by a paramount title, the same distinction is recognized. Bronson, J. says: "Where it," (the conduct of the lessor,) "is fraudulent, the defrauded party, in an action on the case founded on fraud, may recover the value of his bargain, and any special damage which has resulted from the fraud." This rule applies even in cases where there is a covenant for quiet enjoyment. (*Sedg. on Damages*, 165, 166, 2d ed.)

In the case at bar, however, I am inclined to the opinion that the statute forbidding the implication of covenants applies. It provides that no covenant shall be implied in any conveyance of real estate, whether such conveyance contains special covenants or not. (1 *R. S.* 738, § 140.) The lease under which the defendant entered into possession, and by which a rent is reserved, is a grant in fee or a lease in perpetuity. The lessee and not the lessor may consider it forfeited, and it may continue forever. (*Folts* v. *Huntly*, 7 *Wend.* 210.) It did not convey a "chattel real," but was a "conveyance of real estate" within the provision of the statute, in regard to the implication of covenants. (1 *R. S.* 738, § 140. *Id.* 750, § 10.) As it contained no covenant

of seizin, warranty or quiet enjoyment, none can be implied. (*The Mayor &c.* v. *Mabie,* 3 *Kern.* 158.)

The referee having found that there was an eviction as to the water, by a paramount title in a stranger, and no exception having been taken to his decision in this respect, by the plaintiff, it cannot now be reviewed upon the defendant's appeal. Even if he erred in this finding, it must be assumed, for the purposes of this case, that the lessee has been evicted, in accordance with the referee's finding, from a portion of the privileges granted by the lease, without any fraud or bad faith, on the part of the lessor.

The only remaining question is, what damages should be allowed to the defendant?

Assuming that there was an eviction as to the water, by a stranger, by a title paramount to the lessor's without any fault of the plaintiff, the defendant was entitled to an apportionment of the rent. The rule in such cases is correctly laid down in 8 *Bacon's Abr. p.* 514, *tit. Rent,* as follows: "If the lessee is evicted of a part of the land demised, by a stranger, on title paramount, it operates as a suspension of the rent, *pro tanto,* and the rent is apportionable and payable only in respect to the residue." (*See also Parton* v. *Jones,* 2 *Iredell,* 350; *Gilbert on Rents,* 173.)

In *Lawrence* v. *French,* (25 *Wend.* 443,) it was held that when the premises were demised at a fixed rent, and the tenant enters, but is prevented from obtaining the *whole* premises by a person holding a part under a prior *lease* executed by the landlord, the latter has no right to distrain for a proportionate part, but is entitled to sustain an action for use and occupation of the premises and recover under a *quantum meruit.*

Ch. J. Nelson says: "It is a familiar rule that if the landlord enter wrongfully upon or prevent the tenant from the enjoyment of a *part* of the demised premises, it suspends the whole rent until possession is restored. The rule is otherwise where a part is recovered by title paramount to the

lessor's; for in that case he is not so far considered in fault as that it should deprive him of a return for the part remaining. The law therefore directs an apportionment of the rent." (6 *Bac. Abr.* 44, tit. *Rent, L. Gilbert on Rents,* 173. *L. & T.* 214, 219. *Bradley on Dist.* 24, 30.) It will be seen that a wide distinction is recognized between cases where the landlord enters wrongfully and where a portion of the premises is recovered by title paramount to the lessor's. (*See Hegeman* v. *McArthur*, 1 *E. D. Smith,* 148; *Christopher, ex'r,* v. *Austin,* 1 *Kern.* 218; *Ludwell* v. *Newman,* 6 *T. R.* 458; *Tomlinson* v. *Day,* 2 *Brod. & Bing.* 680; 2 *Starkie on Ev.* 630; *Dyett* v. *Pendleton,* 8 *Cowen,* 730; *Neale* v. *Mackenzie,* 12 *Cr., M. & R.* 84.)

I think the referee apportioned the rent in conformity with the doctrine laid down in the cases above cited, and that the defendant was allowed all the damages to which he was legally entitled. The referee deducted $60 annually, being one-half of the annual rent, on account of the deficiency in the water, which was the only disturbance complained of. He thus allowed the $50 paid Mrs. Haight and even beyond the amount actually expended by the defendant in procuring the water. He also allowed the expenses incurred for repairs on the water wheel and floors, which the plaintiff was bound to make. This would appear to be the only real damage and actual loss sustained that could legally be allowed. The value of the lease over and above the rent agreed upon, the loss of profits in business, the expense of moving machinery and other items claimed, were not proper items of damages to be considered; nor was the plaintiff responsible for them.

The defendant had a right to terminate the lease by giving one year's notice of his intention to do so. He was content to remain and abide by its terms and conditions, and has no reason to complain if he pays a fair rent for the premises, in accordance with the agreement, deducting what it would cost per annum to retain the water to which he was entitled.

In fixing the value at $60 annually, and in adopting this

Carter *v.* Burr.

standard, the referee allowed for and included the water used by the defendant from the plaintiff's reservoir, and by his permission and consent.

Although the plaintiff was bound to furnish water to be carried in wood trunks according to the conditions of the lease, yet having furnished the water otherwise than as provided for, I do not see why its value should not be considered in arriving at the amount of damages actually sustained by the defendant. Even if the agreement gave no such right, and the plaintiff does not ask in the complaint to recover that account, yet having given permission to the defendant to use the water for the purpose of supplying the deficiency created, the plaintiff would not be entitled to recover in another action for its use. So long then as the defendant availed himself of the advantages derived from the use of the water with the plaintiff's assent, there is no good reason why its value should not be allowed.

Considering all the facts, I do not feel at liberty to say that the amount of rent allowed by the referee was extravagant and exorbitant, or beyond the fair value of the premises after deducting all damages that could properly be set off. So far as the evidence showed what the actual loss sustained by the defendant was, the referee was better qualified to judge than an appellate tribunal; and as he has not adopted an improper or an illegal basis in deciding that question, there is no good reason for disturbing the conclusion at which he has arrived.

The judgment entered upon the report of the referee should be affirmed.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]