·CALVIN T. CHAMBERLAIN *et al. v.* CYRUS PRATT.

The rule of law regarding a person holding over by consent, after the expiration
of his term, as a tenant from year to year, is applicable only to leases of
real estate.

ACTION to recover the possession of personal property,
namely, a printing press, types and implements adapted to
the printing of a newspaper, and which had been used for
that purpose. The plaintiffs — six persons — showed title in
themselves in the property; the interest of the plaintiff
Chamberlain being one undivided half, and the other plain-
tiffs separately owning shares. In February, 1855, the
plaintiffs leased this property, by parol, to one Hatch, for
one year, at the rent of eighty dollars, and he and the
defendant used it in the printing and publication of a news-
paper. In December following, Hatch withdrew from the
business, and it was afterward carried on by the defendant
alone, he continuing to use the press, types, &c., until
August, 1857, when the property was demanded of the
defendant by one of the plaintiffs, in behalf of all of them;
but the defendant refused to return it. The defense was
based on the position that the defendant, by continuing to
hold with the implied assent of the owners, after the expira-
tion of the year, became a tenant of the property from year
to year, as he would have been if the subject had been real
estate; and as the third year was running when the action
was brought, he could not be dispossessed until the end of
that year, nor then without a notice to quit, which had not
been given.

Another defense set up, and to which much of the evidence
on the trial related, was, that the plaintiffs, in July, 1857,
had given the defendant a written lease of the property for
two years from that date. In answer, it was alleged, on
the part of the plaintiffs, and evidence was given tending
to sustain the position, that the lease was obtained by fraud-
ulent representations of the defendant to Park, one of the

plaintiffs, to the effect that Chamberlain, who was the largest proprietor, had seen and assented to the lease as drawn, and had requested Park to sign his, Chamberlain's, name to it, which Park accordingly did, when in fact Chamberlain had never made such a request. The lease seems to have been signed by the other plaintiffs, and was delivered to the defendant; but the plaintiffs, on discovering the alleged fraud, demanded the lease of the defendant, who refused to return it, and the plaintiffs had never received anything upon it.

At the close of the evidence, the defendant submitted certain instructions which he desired to have given to the jury. It does not appear that these were referred to by the judge otherwise than by the part of his charge which is set out in the case; but there was no exception to a refusal to charge.

On the subject of the written lease the charge was that, if valid, it was a defense, the action having been brought before the expiration of the time; that if the signatures of the plaintiffs were obtained by the fraud charged, it was void; but the burden of establishing the fraud was on the plaintiffs. In regard to the position that the defendant, after the expiration of the lease to Hatch, was a tenant from year to year, and entitled to hold until the end of the current year, and to notice to quit, the charge was, in substance, that such was the rule as to real estate, but that it was not applicable to a lease of chattels such as this was. The judge left to the jury a question as to a verbal renewal of the first lease, of which he said there was but little evidence.

The defendant's counsel excepted to the charge so far as the same differed from the request to charge. The verdict was for the plaintiffs, and the General Term affirmed the judgment. The defendant appeals.

*Samuel Hand,* for the appellant.

*. S. E. Church,* for the respondents.

DENIO, Ch. J. The only debatable question in this case, is whether the defendant is in the position of a tenant under

a demise of real estate who holds over by consent after the expiration of his term. The law regards such a person as a tenant from year to year; and he cannot be dispossessed except at the end of some year, nor then unless he has received notice to quit. The defendant's counsel maintains that there is no difference in this respect between a lease of houses or of lands, and a lease of personal chattels. A good many cases have been referred to showing that it is a common arrangement of personal property for the owner to grant the use of it to another, for a given period, for a return by way of rent or other compensation. But this proves nothing, unless it can be shown that the courts have applied to that species of letting, the same rules which govern leases of real estate, or some of those rules. Our system of law, unlike that of the countries whose legal institutions are based upon the civil law, makes a wide distinction between the bargains and assurances which concern land and those which relate to personal interests. The reasons for some of these distinctions are now obsolete; still they have become rules of property, and it does not belong to the courts to abrogate them, though they may not now be able to appreciate the motives upon which they were established. In regard to lands demised for cultivation, there is an obvious reason why a tenant should not be disturbed in the course of the year which he has been permitted to enter upon, and the same reason holds in respect to houses and other tenements which are usually rented at stated periods. If the reason were less obvious the fact that a tenant holding over by permission is in or upon a new demise for another year is so well established that every one is supposed to regulate his conduct by that rule. The reasons upon which I have supposed the principle to be founded, may or may not, in a given case, be applicable to a lease of chattels. In the present instance the purposes for which the property was to be, and for which it was, actually used, were such that we may suppose it to have been peculiarly inconvenient to the possessor to be disturbed without prior notice, or upon a short notice. In a lease of some other kind of personal property it might be quite indifferent whether

it was taken away at one time or another. It is sufficient that the rule is a peculiar one, established upon reasons peculiarly applicable to real estate, and that its principles have not been extended beyond that species of property.

The only case referred to which has any bearing upon the question, is favorable to the plaintiffs' view. In *Zule* v. *Zule* (24 Wend., 76), the question was whether a lease embracing farming utensils and the stock of a farm, and which contained a provision that the lessor might put an end to the demise by selling the premises during the term, contained a covenant by implication on the part of the lessee, which it was conceded would have been the case in a lease of real estate, to return the subject to the lessor when the term was thus broken up; and it was held that it did not embrace such a contract, and that consequently the lessor's only remedy for the chattels withheld was trespass or trover.

From the best consideration which I have been able to bestow on the question, my conclusion is that the defendant's title wholly ceased at the expiration of the lease to Hatch, and that he acquired no new rights by the delay of the plaintiffs in calling for the return of their property.

The evidence fairly raised the question of fraud in obtaining the written lease, and the jury, under a proper charge upon that question, found against the defendant.

The judgment appealed from must be affirmed.

DAVIS, J. This was an action to recover possession of a printing press and types and other materials, of which the plaintiffs were owners.

It appeared that in February, 1855, the plaintiffs leased the property to defendant and one Hatch for one year. They used the same to publish a newspaper till December of that year, when Hatch withdrew and defendant continued the publication of the paper till June, 1857, when he commenced the publication of another paper with the same property. In August, 1857, Parke, one of the owners, demanded possession of the property on behalf of all the owners, and defendant refused to surrender it. In January following this action was brought. The defendant claimed to hold possession of

the property under a new lease to himself, dated the 15th of July, 1857, for two years at fifty dollars per year. The plaintiffs alleged that this lease was obtained by fraud on the part of defendant, and was, therefore, of no effect. The defendant also claimed to retain possession until the expiration of the third year from the date of the original lease to himself and Hatch, on the ground that he had been suffered to hold over into the third year until the law would infer a lease for another year.

On the question of fraud in obtaining the lease of July, 1857, there was evidence on both sides tending, respectively, to prove and to disprove the alleged fraud. The question was fully and very fairly submitted to the jury by the learned justice who tried the cause, and their finding that the alleged fraud was established is of course conclusive.

The court also charged the jury, "that the holding over of personal property after the expiration of a lease thereof by a lessee, did not operate as a renewal of the lease, or give the lessee a right to retain possession thereof against the lessors; that the rule was different in regard to real estate."

The correctness of this charge is the question chiefly discussed on this appeal. I think there can be no doubt of its soundness. The hirer of personal property is a simple bailee. He can acquire no other rights than are given him by the terms of the bailment; and if he retain possession after the period stipulated by the bailment, he holds the property as bailee subject to the demand and disposal of the owner; and after a demand and refusal trover or replevin will lie against him. (*Zule* v. *Zule,* 24 Wend., 76, 81.) "The remedy of the bailor (for the lessor is no more than a bailor) is to demand the restoration, and if that be refused bring trover, detinue or replevin under the late statute." (Per COWEN, J., 24 Wend., 81.)

The effect of keeping possession of the property after the fixed period has expired, in connection with other circumstances, as evidence tending to show and from which a jury might find a new agreement for a further hiring, is another question. The point under consideration is whether the law

implies a new bailment from the naked act of retaining the possession.    There is no such rule applicable to personal property, and therefore the charge of the learned justice was right.

The counsel for the defendant presented to the judge six propositions, in writing, and requested him to charge in accordance therewith.  "Whereupon," the case states, "the justice, *among other things,* charged the jury"—setting forth the charge as given on several questions in the case.   "At the close of the charge the counsel for the defendant excepted thereto so far as the same differed from the above requests." This exception is not sufficient to raise any question for our consideration.    It is not an exception to any point of the charge as given; nor to any refusal of the judge to charge as requested; but to the whole charge so far as it differed from the six propositions presented.   But as the whole charge is not given, it is impossible to see wherein it did differ from such propositions.    The charge given is professedly only a part, while the exception is to the whole, in so far as the whole, and not the part set forth, differed from the requests. This is altogether too loose and general.   The counsel should have specifically pointed out the difference of which he complained, so that the mind of the judge might have been brought to the exact proposition, and he have had the opportunity to make any correction or explanation he thought advisable; or his refusal to charge each of the several propositions should have been obtained, and an exception taken thereto.

The authorities are numerous on this point of practice in taking exceptions at circuit, and the rules laid down by them ought to be adhered to and enforced. (*Jones* v. *Osgood*, 2 Seld., 233; *Haggart* v. *Morgan*, 1 id., 422; *Decker* v. *Matthews*, 2 Kern., 319; *Howland* v. *Willets*, 5 Seld., 170; *Caldwell* v. *Murphy*, 1 Kern., 416; *Dunchel* v. *Wiley*, id., 420; *Hunt* v. *Maybee*, 3 Seld., 266; *Hart* v. *The R. & S. R. R. Co.*, 4 id., 37; *Carpenter* v. *Stillwell*, 1 Kern., 61.)

The judgment should be affirmed.

All the judges concurring, judgment affirmed.

PORTER, J., having been counsel in the cause, took no part.