## SUPREME COURT.

### THE MAYOR, &c., agt. JOSEPH KETCHUM *et al.*

*Landlord and tenant — Apportionment of rent — Rent cannot be apportioned in respect to time in the absence of a statute or an express agreement to that effect.*

The city leased to the defendants, for wharfage purposes, the south side of pier No. 51, North river, for a term of years, ending in 1875, the rent payable quarterly, on the first days of August, November, February and May. There was a proviso in the lease that the lessors might at any time " set apart for their use any or all of such wharves as they may require," the right to the part of the premises so required to vest in the city for all purposes, on notice being given to the lessees by the comptroller, the rent thereafter to be equitably reduced proportionate to the part of the premises not taken. On the 9th of October, 1873, notice was served requiring the whole of the premises, and the city took possession. In this action to recover the proportionate amount of rent accruing between August first and October ninth:

*Held*, that there can be no recovery, because, in the absence of a statute, or an express agreement to that effect, rent cannot be apportioned in respect to time. The act of 1875, providing for an apportionment of rents, has no application to leases executed before that date.

*New York Circuit, June,* 1884.

THIS action was brought to recover the amount claimed to be due to the plaintiffs upon an instrument in writing, dated April 25, 1865, whereby they granted, bargained, sold and assigned to the defendants " the wharfage which shall or may arise, accrue or become due between the 1st day of May, 1865, and the 1st day of May, 1875, for the use or occupation by vessels of more than five tons of burthen of  *  *  * the south side of pier number 51, North river ;" such instrument contained the following, among other provisions, viz. :

"And it is hereby expressly understood and agreed by and between the parties to these presents, that the said parties of the first part, or their successors, may, at any time during the continuance of these presents, set apart for their use any or all such wharves, docks, piers or slips hereinbefore mentioned, as they, the said parties of the first part, may during the time last mentioned require.  *  *  *  It shall be the duty of the comptroller of the city of New York, or the person for the time being lawfully administering the office of comptroller, to notify the said parties of the second part or their assigns, in writing, when any part of the said premises is to be taken by the said parties of the first part or their successors, and from the time of the service of such notice the right to the part of the said premises so required by the said parties of the first part, or their successors, shall vest in them for all purposes.  But in every such case it shall be the right of the said parties of the second part, or their assigns, to have an equitable deduction for the future made from the rate of rent in this lease reserved, to be ascertained and settled by the comptroller, or the person lawfully administering the office of comptroller; and the rent to be thereafter paid by the said parties of the second part, or their assigns, shall be the balance remaining after the deduction so made as aforesaid."

There are also covenants on the part of the grantees that they will not assign any of their rights without the written consent of the grantors, and that they will pay the annual

rent of $1,500 in equal quarterly payments, on the first days of August, November, February and May. On the 9th of October, 1873, notice was served requiring the whole of the premises, and shortly thereafter the plaintiffs took possession.

Bowne, one of the defendants herein, subsequently commenced an action against the plaintiffs herein to recover damages for such taking possession, claiming that it was a breach of said agreement. The plaintiffs, as defendants in that action, pleaded as a counter-claim their right to recover rent for the quarter ending November 1, 1873. Upon the trial of that action the plaintiff therein was nonsuited, and the judgment recorded was read in evidence in this case.

Upon the trial of this action a verdict was directed in favor of the plaintiffs for $291.66, being the proportionate amount of rent accruing between August first and October ninth. The case was reserved for further consideration, with leave to plaintiffs to move for judgment on the verdict, and to the defendants to move for a nonsuit, notwithstanding the verdict.

*H. W. Wheeler*, for plaintiffs.

*E. M. Wright*, for defendant Bowne.

*John H. Bird*, for defendant Grant.

VANN, *J.* — The judgment of the court of common pleas in *Bowne* agt. *The Mayor*, &c., was not pleaded by any defendant in this action, and hence is not available as a bar or an estoppel (*Krekeler* agt. *Titter*, 62 *N. Y.*, 372; *Dalrymple* agt. *Hunt*, 5 *Hun*, 111). If, however, it had been formally pleaded, it would have been of no avail, because the defendants in that case, by moving and obtaining a nonsuit as to the plaintiff's cause of action, in effect submitted to a nonsuit as to their own cause of action, pleaded as a counter-claim. There was a virtual discontinuance as to their claim against the plaintiffs, which was not submitted to or

passed upon by the court.   As a plaintiff may take a volun-
tary nonsuit, so a defendant may decline to submit a counter-
claim for adjudication, and in either case a subsequent action
may be brought upon the claim (*Jones* agt. *Underwood*, 35
*Barb.*, 211).   A counter-claim that the party is bound to pre-
sent and litigate in a particular suit or lose the benefit of it
is an exception to the general rule and has no application to
this action.

The decision in *Bowne* agt. *The Mayor*, &c., although not
binding as an estoppel, would be valuable as a precedent if
the question there decided arose in this case.   That action
was brought to recover damages for an alleged violation by
the mayor, &c., of their agreement, termed a lease, by taking
possession of the pier and depriving the lessee of any further
use thereof.   The court held that the action would not lie,
and dismissed the complaint without, so far as appears, stating
the ground of its action.   The only point necessarily decided,
therefore, was that the mayor, &c., had the right, under said
agreement, to take possession, which is the theory upon which
the plaintiff in this action claims a recovery.

By force of the agreement, and in the manner therein pro-
vided, the plaintiffs had the right to take possession of the
whole or any part of the premises in question.   Upon service
of the notice on the 9th of October, 1873, the right to the
entire premises vested in them, for all purposes, the same as
if no agreement in relation thereto had been made with the
defendants.   If a part only of the premises had been taken
the defendants would, thereafter, have been liable only for an
amount of rent proportionate to the part of the premises not
taken.   As the whole pier was taken, the entire rent ceased
from that date, for the enjoyment of the premises is an
implied condition on which the tenant is bound to pay rent.
The rent already earned, though not payable until November
first, has not been paid.   There is no provision in the agree-
ment that rent earned but not due when possession is taken
by the city shall not become due, or that it shall not be paid.

The parties provided by their contract that an "equitable deduction for the future" should be made from the rate of rent reserved, but did not provide for any deduction from the rent already earned.

It is well settled that an eviction of a tenant by his landlord from the whole or even from a part of the demised premises, suspends the rent until the possession is restored (*Christopher* agt. *Austin*, 11 *N. Y.*, 216; *Pendleton* agt. *Dyett*, 4 *Cow.*, 581). But the eviction, in order to suspend the payment of rent, must be an unlawful eviction, where, by the wrongful act of the landlord, the tenant is deprived of possession (*Id.; Lewis* agt. *Payn*, 4 *Wend.*, 423; *Taylor's Landlord and Tenant, sec.* 378). In such a case the tenant may recover the difference between the value of his lease and the stipulated rent (*Chatterton* agt. *Fox*, 5 *Duer*, 64). The recovery of part of the premises by title paramount to that of the landlord, termination of the tenancy by the act of God or the law, or by the right reserved, voluntary surrender, &c., are exceptions to the rule, for in such cases it is held that as the landlord is not in fault he is entitled to recover a proportionate part of the rent (*Lawrence* agt. *French*, 25 *Wend.*, 443; *Carter* agt. *Burr*, 39 *Barb.*, 59).

In the case under consideration the eviction was not unlawful. The landlord did nothing but what the tenant agreed he might do. The obligation to pay the rent depends upon the enjoyment of the premises or upon the right to enjoy them, but if the tenant by his own contract consents that the landlord may terminate the lease or take possession at will, it seems equitable that he should pay rent to the extent and as long as he occupies. As it was said in *Walker's case* (2 *Coke*, 59, 61, *part* 3, *fol.* 22): "If a man leases three acres, rendering rent, and the lessor ousts the lessee of one acre, he shall have an action of debt for no part, but if the lessor recovers part in an action of waste or enters into part for a forfeiture or by surrender or by special condition for entry into part, or if part of the land be evicted by title paramount, in all these

cases the rent reserved of the lease for years, which is a rent service, shall be apportioned." This case seems to have been generally followed and approved, and it may be regarded as settled that where a tenant is evicted without fault on the part of the landlord, the rent will be apportioned. Such apportionment, however, depends upon the extent of the occupation. In this case an apportionment is sought that is based upon the time of occupation. Without any satisfactory reason for the distinction, the rule in such cases seems to be different. "If rent is payable quarterly, and the tenant be turned out before the end of the quarter the landlord loses the rent of the current quarter, for rent will not be apportioned in respect to time (*Taylor's Landlord and Tenant*, 285, sec. 387; *Clun's case*, 10 *Coke*, 128; *Zule* agt. *Zule*, 24 *Wend.*, 76).

In *Clun's case* there was a lease for fifty years, if the lessor should live so long, and the rent was payable quarterly. The lessor died at about the end of one quarter, and it was held that no action would lie to recover the rent, because the rent "is to be raised out of the profits of the land and is not due until the profits are taken by the lessee; and that is the reason that if the land is evicted, or if the lease determines before the legal time of payment, no rent shall be paid, for there shall never be an apportionment in respect of part of the time, as there shall be upon an eviction of part of the land."

In *Zule* agt. *Zule* the term was five years and the rent payable semi-annually, with a reservation by the lessor of the right to sell at any time. The lease was terminated by a sale of the premises about three months before the half-yearly payment became due, and it was held that the lessor could not claim an apportionment of rent, or recover the portion that had accrued since the last rent day, in the absence of a provision in the lease to that effect.

Judge COWEN, speaking for the court, said: "Even where the tenancy was determined by the act of God, as where the lessor was tenant for life, and died intermediate the rent days, the rent could not be apportioned, hence the statutes (11 *Geo.*

The Mayor, etc., agt. Ketchum *et al.*

2, *chap.* 19, *and* 1 *R. S.*, 738, *sec.* 22). The objection is stronger again against the lessor who puts an end to the lease by his own act without necessity. It is enough to say, however, that there is no special provision. either in the lease or by statute, and without one or the other rent can never be apportioned in respect to time."

In *Nicholson* agt. *Munnigle* (6 *Allen*, 215), it was held that a landlord who, in pursuance of a written lease, has terminated the. tenancy between the rent days, could not maintain an action for rent under the lease, or an action of assumpsit for use and occupation of the premises after the last rent day, prior to such termination of the tenancy. The result is the same where there is a voluntary surrender of the lease to the landlord before the rent. of the current quarter becomes payable (*Young* agt. *Peyser*, 3 *Bosw.*, 308).

The same rule prevails in equity as at common law. Judge STORY says: "No apportionment in respect to time was in any. case admitted by the common law; and this severe doctrine, artificial and unjust as it seems to be, was scrupulously followed in equity" (*Story's Eq. Pr.*, sec. 476).

The act of 1875 (*chap.* 542), which provides.for an apportionment of rents, annuities, dividends and other payments, according to the time which shall have elapsed since the last payment became due, has no application to the lease in question, which was executed in 1865.

I am of the opinion that there can be no recovery in this case, because in the absence of a statute or an express agreement to that effect rent cannot be apportioned in respect to time. While the premises in question may not be regarded as real estate for some purposes (*The Mayor, &c.,* agt. *Mabie*, 13 *N. Y.*, 15) they have been held to be real estate for other purposes (*Smith* agt. *The Mayor, &c.,* 68 *N. Y.*, 552), and from their nature and the language used in the lease and notice to terminate the same I think they must be considered real estate for the purposes of this action.

The clause in the lease providing for an equitable deduction

for the future from the rate of rent applies only when a part of the premises has been taken, and refers to an apportionment based on the extent and not upon the time of occupation. The rent would be still so much per year, payable quarterly. The price of the use per day would be less, while in this action the plaintiffs seek to recover the same price per day, but for a period less than a quarter, or at the same rate for a shorter time. By no other construction can adequate force be given to the word rate.

The verdict must be set aside, and under the right reserved a nonsuit entered.