*In re* PARSELL'S ESTATE.

EDGAR *v.* PARSELL.

1. BAILMENT—ANIMALS—SALE—DISTINCTION—CONVERSION.

   Where claimant delivered 12 ewes to one since deceased, who receipted for the animals, stating that he was to keep them for an annual rental of one-half the wool and increase, for a term of three years, the transaction was not a sale, but a bailment, since the obligation to be implied from the transaction was that decedent was to return the same sheep or the survivors of them at the end of the term.

2. LIMITATION OF ACTIONS—BAILMENTS—ANIMALS—REDELIVERY.

   Decedent, who received from the owner 12 ewes to be kept

for one-half the wool and increase for a period of three years, and who was not shown by the evidence to have asserted any claim of title in the property after the termination of that period, but on the contrary to have admitted that he had in his possession sheep of the claimant, and made payments in labor or in kind upon the contract, which were receipted in writing thereon, was not entitled to retain possession of the ewes on the ground that the action was barred under the statute of limitations.[1]

3. EVIDENCE—LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—ADVERSE HOLDING.

Although the provisions of the statute of limitations, section 9740, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14147), require that an acknowledgment or promise as evidence of a continuing contract so as to take the case out of the provisions of the statute must be in writing, they do not require the exclusion from the evidence of admissions of the deceased tending to show that he was in possession of claimant's sheep and that he acknowledged claimant's ownership; the proof having a tendency to establish that his holding was not adverse but that he held as bailee.

4. SAME—CONTRACTS—TRUST RELATION.

If at the expiration of the agreed time the bailee does not deliver the property or deny the bailor's right to possession, the bailment does not necessarily terminate, and he holds the property in trust, the bailor having the right to resume possession or consider the bailment as renewed.

5. SAME—ADVERSE POSSESSION.

It is recognized as a general rule of bailment that mere retention of possession by the bailee, however long continued, will not of itself effect change of ownership: until he asserts an adverse claim the statute of limitations does not operate in his favor.

Error to Tuscola; Beach, J. Submitted January 14, 1915. (Docket No. 85.) Decided March 17, 1915.

Mrs. M. V. Edgar presented a claim against the estate of G. Franklin Parsell, deceased, for certain

---

[1] Upon the liability of a bailee under special terms of contract for care or return of subject of bailment, see note in L. R. A. 1915B, 295.

sheep and their increase. The commissioners on claims rejected the claim in part and claimant appealed to the circuit court. Judgment for defendant upon a directed verdict. Claimant brings error. Reversed.

*Coburn & Misner* and *Harry P. George,* for appellant.

*H. H. Smith,* for appellee.

STEERE, J. Mrs. M. V. Edgar inaugurated this proceeding in the probate court of Tuscola county to establish a claim against the estate of Franklin Parsell, deceased. Josephine Parsell, executrix of said estate, contested said claim, which was for 12 ewe sheep let to deceased, with one-half their wool and increase from 1898 to 1913, amounting less credits to $307.50. The commissioners on claims rejected all of said account but $31.61, and allowed the claim for the latter amount. Claimant appealed the matter to the circuit court, where a judgment was entered in favor of said estate on a verdict directed by the court at the conclusion of plaintiff's testimony, on the ground that recovery was barred by the statute of limitations. Plaintiff moved for a new trial, which was denied.

Appellant's assignments of error, covering refusal to charge as requested, directing a verdict and denying a new trial, all center upon the single question of whether, regarding the testimony in its most favorable light for her, she is, as a matter of law, precluded from recovery by the statute of repose. No objections were made, so far as the record discloses, to any testimony offered by her, and the only issue is upon its significance and adequacy.

Upon the trial the following exhibit was identified and introduced in evidence:

"ALMER, October 18, 1898.
"This is to certify that G. F. Parsell has this day

taken of M. V. Edgar twelve (12) ewe sheep to keep for the rental annually of one-half the wool and increase from said twelve (12) sheep, for the term of three years from and after this date.

"G. F. PARSELL."

Indorsed on the back of this appears:

"Paid eighteen (18) sheep back, November, 1903.

"M. V. EDGAR."

"November, 1908, to ten days' work."

At the end of the three-year term deceased continued to keep the sheep. There is no direct proof of an express contract of renewal in writing, or otherwise. The indorsement on the back of the written memorandum that 18 sheep were paid back in November, 1903, is not questioned. Plaintiff's husband, testifying as to this, says that 18 lambs were returned then. He further testified, without objection, to three different conversations, one as late as 1912, in which deceased stated he yet had plaintiff's sheep, and admitted an indebtedness to her in that connection, and directed that some work done by him for her be applied on such indebtedness. John Miller, a neighboring farmer, testified that in 1906 deceased stated to him, "I have some of Mrs. Edgar's sheep yet, and they are dandies." In behalf of said estate it is urged that such evidence is not competent to show renewal of said contract during the remaining 10 years of deceased's life, nor indebtedness or payment on such renewal, the indorsement of "ten days' work" in November, 1908, shown to have been made by plaintiff, not being evidence of payment "so as to take the case out of the operation" of the statute under section 9744, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14151); *Fowles* v. *Joslyn*, 130 Mich. 272 (89 N. W. 946), and deceased's oral admissions or promises are excluded by section 9740, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 14147), which provides:

"In actions founded upon contract express or implied, no acknowledgment or promise shall be evidence of a continuing contract, whereby to take the case out of the provisions of this chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing, signed by the party to be charged thereby."

This may eliminate from consideration certain promises and admissions of deceased, testified to, touching past indebtedness, but not, in our opinion, his statements of the existing fact that he was yet in possession of some of her sheep and did not hold them adversely.

We are impressed that in disposing of this case in harmony with general rules as to limitation of actions, sufficient consideration was not given to the nature of the transaction by which contractual relations were established between the parties. The four-line memorandum of agreement signed by deceased, and the meager evidence of what was done in pursuance of it, clearly point to a bailment—a trust relation arising from lawful possession of property taken with consent of the owner for an agreed time and purpose, and the duty to later account for it to the owner.

In Ruling Case Law, vol. 3, p. 73, the general rule upon this subject is thus stated:

"Where one leaves animals, as sheep, with another on shares for a certain period of time, providing for the payment of a certain amount of wool per head and for the disposition of the increase, the sheep to be redelivered at the end of the term, the transaction is of course a bailment; but where an equal number is to be returned, of like value, ordinarily it is to be deemed a sale."

There was no agreement in this case to return an equal number of like value. The implied legal obligation arising from this agreement was to return the same sheep or their survivors at the end of the term. That this was a bailment there can be no question.

*Woodward* v. *Edmunds,* 20 Utah, 118 (57 Pac. 848) ; *Manti Bank* v. *Peterson,* 30 Utah, 475 (86 Pac. 414, 116 Am. St. Rep. 862) ; *Robinson* v. *Haas,* 40 Cal. 474; *Smith* v. *Niles,* 20 Vt. 315 (49 Am. Dec. 782). In the latter case the transaction was held to be a bailment and not a sale, although the animals were to be returned "or those worth as much in all respects."

It is shown that these sheep were not redelivered at the end of the term, nor ever demanded by the owner, so far as shown, nor that her title was ever denied. There is evidence tending to show it was not. Two years later deceased "paid eighteen (18) sheep back," or "lambs," according to the testimony of plaintiff's husband. Whether during the three years or afterwards he made the annual payments in kind as stipulated is otherwise left to conjecture.

The short memorandum of agreement leaves much to inference. Deceased took the 12 ewe sheep, in 1898, to "keep" for three years, agreeing to pay annually for their "rental" half the wool and increase. He died in 1913. How many of these sheep outlived him is not shown. In the absence of special agreement, it was his duty, while in possession of them under his bailment, to annually pay the agreed rental in kind, and properly keep, feed, shelter, and otherwise care for them. He did not insure them, nor agree to replace any which perished from natural causes, by disease, or accident without fault on his part. He was only holden to the honest exercise of average diligence. It was a bailment for benefit of both. Where the parties fail to expressly define their relative rights and duties in that particular, the law only requires of the bailee the care and diligence in conserving the property intrusted to him which persons of average diligence and prudence bestow towards such property, or upon their own property, under like circumstances.

Counsel for appellee emphasize that, conceding this transaction was a bailment, it was for a definite time, and urge that the bailment terminated when the time expired; that plaintiff was then entitled to a return of the sheep, and her right of action to recover them or their value then arose. This may be recognized as the general rule and, unquestionably, the bailment ends absolutely if the bailee returns the property or accounts for it as is his duty; but if at the expiration of the appointed time he does not redeliver the property or excuse the failure to do so, nor deny the bailor's right to possession of it, the bailment does not necessarily end as to him, for he yet holds the property in trust, and "the bailor has a right to resume the property or consider the bailment as continued or renewed" (5 Cyc. p. 207; Elliott on Contracts, § 3005), and under some circumstances the inaction of the parties might be treated as inferential evidence of an agreement to that effect (Schouler on Bailments [3d Ed.], § 159).

The law of bailments does not, however, as in case of leases, imply a renewal of the former contract from the mere naked act of retaining possession, but possession, retained without objection after the period originally fixed has expired, in connection with other persuading circumstances, may raise a question of fact for a jury as to whether the bailment was terminated or continued and renewed. *Chamberlain* v. *Pratt*, 33 N. Y. 47, 2 Enc. of Ev. p. 189.

It is recognized as a general rule of bailment that the mere retention of possession of property by the bailee, however long continued, will not in itself work a change of ownership, and the statute of limitations cannot run in his favor until he sets up and asserts some adverse claim in respect to the bailment by which he acquired possession of it. *Blount* v. *Beall*, 95 Ga. 182 (22 S. E. 52); *Reizenstein* v. *Marquardt*, 75 Iowa, 294 (39 N. W. 506, 1 L. R. A. 318, 9 Am. St. Rep.

477). While in these cases the time of termination of the bailment is not shown to have been so definitely set as here, both the rule and reason therefor are well stated as of general application. In the last case cited it is said:

"The rights and obligations of a bailee of personal property are very much like those of a trustee of a resulting trust in realty, and it has always been held that the statute of limitations commences to run in favor of a trustee from the time when he denies the trust and claims the trust property as his own. *Peters* v. *Jones*, 35 Iowa, 512; *Gebhard* v. *Sattler*, 40 Iowa, 152. Upon the same principle the statute of limitations will not begin to run in favor of a bailee until he denies the bailment and converts the property to his own use."

That the burden of proof rested upon plaintiff to establish, by a preponderance of evidence, a continuance or renewal of the bailment, as well as various other facts essential to recovery, is clear, but under the facts and circumstances disclosed in this record we must conclude it cannot be said, as a matter of law, that she is absolutely barred from any recovery by the statute of limitations.

The judgment is reversed, and a new trial granted.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.