Providence County Savings Bank *vs.* Charles E. Hall.

A tenant holding over without a new contract with the landlord may, at the landlord's option, be treated as a trespasser or as a tenant for a new term, if the prior term was for less than a year. If the prior term was for a year or more, then the tenant so holding over may be treated as a trespasser or as a tenant from year to year.

Any unreasonable delay on the part of the landlord to eject the tenant will raise the presumption that the landlord elects to recognize a continued tenancy either for a new term, or from year to year as above.

Defendant's petition for a new trial.

*February* 18, 1888. Durfee, C. J. This is a petition for a new trial of an action of *assumpsit* for the use and occupation of a small farm with dwelling-house thereon for one year. The action was tried in the Court of Common Pleas. It appeared on the trial that the defendant entered into occupation in 1877, hiring for a year from April 1, 1877, to April 1, 1878, at $300

per annum, and continued to occupy at the same rent until the year 1883–84 ; that on October 1, 1883, he received written notice from the plaintiff bank to quit April 1, 1884, but continued, notwithstanding, to occupy until the latter part of November, 1884, when, without written notice to the bank, he quitted, leaving the key with a neighbor, from whom he got it when he first entered as tenant. He testified that about April 1, 1884, he saw the treasurer of the bank, who had charge of the letting, and asked permission to remain a few months until a house then building for him could be completed, and that the treasurer refused to give it, saying that it would be an injury to the bank, which wanted to sell, and that in August the bank had a board set up on the premises with "For Sale" painted thereon. He also testified that the farm contained only about thirteen acres, mostly poor land; that he did not plough or plant in 1884, because he expected to leave, and only mowed the lawn in front of the house, getting not over a quarter of a ton of hay. This testimony was not contradicted. He had, however, been accustomed to pay the taxes, and to have the amount deducted from the bill for rent. He paid the tax of 1884.

The bank claimed on this testimony that it was entitled to recover $300 rent for the year ending April 1, 1885. The defendant contended that under the notice to quit, his yearly tenancy ended April 1, 1884, and that he was not liable for a year's rent for the year ensuing. He asked the court to charge the jury that if they should find that the bank gave the proper notice to terminate the letting April 1, 1884, the letting did then terminate, and the bank, if it did not afterwards recognize him as tenant by taking rent or otherwise, was absolved from giving him further notice, and he was absolved from giving notice to the bank in order to quit legally ; and also to charge that if the letting came to an end April 1, 1884, and the bank refused to let further, there could be no yearly letting or tenancy afterwards until a new contract was entered into either by implication or otherwise. The court refused so to charge, but did charge in effect that if the bank delayed to act on the notice to quit for an unwarrantable time, it lost the benefit of it, and could only terminate the letting at the end of the going year by another notice, and the defendant could

·only terminate his tenancy in like manner, and left the jury to determine as a matter of fact whether the bank did unreasonably delay. The jury returned a verdict for the bank for a year's rent. The question is, whether the rulings and refusals to rule were erroneous.

The purport of the charge was that, if a tenant from year to year holds over after his tenancy has been terminated by notice to quit, it is optional with the landlord either to follow up the notice by ejectment, or to waive the notice and hold the tenant for another year, whether the tenant actually agrees to it or not. The charge is supported by numerous American cases. *Hemphill* v. *Flynn*, 2 Pa. St. 144; *Bacon* v. *Brown*, 9 Conn. 334; *Conway* v. *Starkweather*, 1 Denio, 113; *Schuyler* v. *Smith*, 51 N. Y. 309; 10 Amer. Rep. 609; *Witt* v. *The Mayor, &c. of New York*, 5 Robertson N. Y. 248; also, 6 Robertson N. Y. 441; *Noel* v. *McCrory*, 7 Cold. Tenn. 623; *Schuisler* v. *Ames*, 16 Ala. 73; *Wolffe* v. *Wolff & Bro.* 69 Ala. 549; *Clinton Wire Cloth Co.* v. *Gardner et al.* 99 Ill. 151; *Tolle* v. *Orth*, 75 Mich. 298. Some of these cases are very strong. Thus, in *Conway* v. *Starkweather*, the tenant held over fourteen days, having refused to renew the tenancy before his term expired; in *Schuyler* v. *Smith*, tenants of a wharf held over twenty one days, while another wharf was preparing for them, they having given notice before their lease ended that they should not continue the tenancy; in *Wolffe* v. *Wolff & Bro.* the tenant held ten days after his term expired, under notice previously given that he could not quit at once, but would pay a reasonable rent for the unavoidable occupancy; and in *Clinton Wire Cloth Co.* v. *Gardner et al.*, the tenants held over eleven days under notice that they should not remain without a reduction of rent; their holding over being in part the result of expectation that the rent would be reduced. It is true that in the cases cited the tenant was in for a definite term; but so long as the letting is terminated, we do not see that it matters whether it be terminated by effluxion of time or notice to quit. In *Schuyler* v. *Smith* the tenant contended that the relation of landlord and tenant could only be created by agreement, and there could be no agreement without mutuality. The court replied that the tenant held over at his peril, the landlord having the option to treat him as

trespasser or tenant for a year longer on the terms of the prior lease so far as applicable, the tenancy arising by operation of law regardless of the tenant's assent. In *Clinton Wire Cloth Co.* v. *Gardner et al.* the court said that the rule laid down in *Schuyler* v. *Smith* "is the one established by the current of American decisions." The ground of decision is that when a tenant holds over he presumably holds over for another year, if the prior tenancy was for one or more years; or, if the time was shorter, for another term in case the landlord assents; and he cannot be permitted to overthrow this presumption by setting up that he intended to hold over as a wrong-doer and not as a tenant; and the doctrine is urgently defended on the ground that the tenant being in possession has the landlord at disadvantage, and can greatly embarrass or defeat his arrangements for a new letting by holding over, and therefore should not do so without the risk of being held himself.

The English cases are more lenient to the tenant, and hold that by holding over he becomes simply a tenant at sufferance, and cannot be held for another year or term without his assent, express or implied, the question of assent being a question of fact for the jury. *Ibbs* v. *Richardson*, 9 A. & E. 849; *Jones* v. *Shears*, 4 A. & E. 832; *Waring* v. *King*, 8 M. & W. 571. The English rule is recognized in Massachusetts and Missouri. *Delano* v. *Montague*, 4 Cush. 42; *Edwards et al.* v. *Hale et al.* 9 Allen, 462; *Emmons* v. *Scudder*, 115 Mass. 367; *Neumeister* v. *Palmer*, 8 Mo. App. 491. In *Edwards et al.* v. *Hale et al.* the court held that for the creation of a new tenancy "there must be a new contract, either express or inferable from the dealings of the parties," and remarked that *Conway* v. *Starkweather* was not well sustained by authority. The remark could not now be repeated very well.

There is no reported decision in this State which is in point. We think it has been generally supposed that where a tenant holds over he is presumed to become a tenant for another year, or, if the prior term was shorter, for another term, if the landlord consents. On the question whether the presumption is rebuttable otherwise than by proving a new contract, we are not aware that there is any prevalent opinion.

We decide, in accordance with what we consider to be the greater weight of American authority, that, if a tenant holds over without any new contract, it is optional with the landlord to treat him either as a trespasser or as tenant from year to year, in case the prior term was for a year or longer; and if the prior term was shorter than a year, then from term to term, according to such shorter term; an election to treat him as tenant, however, being inferable from any unreasonable delay to proceed against him as a trespasser, as well as from words or acts directly recognizing him as tenant. *Conway* v. *Starkweather*, *supra* ; *Moshier* v. *Reding et al.* 12 Me. 478; *Douglas* v. *Whitaker*, 32 Kans. 381.

Of course if a tenant remains in possession for some particular time or purpose, by permission of the landlord, he will only be liable, unless he exceeds the permission, for the period of occupation. And so, if the landlord accepts a surrender of the premises from the tenant holding over, the tenant will be liable for rent, or use and occupation, only up to the time of such acceptance.                                   *Petition dismissed.*

*W. B. Tanner*, for plaintiff.

*James C. Collins*, for defendant.

