# LOUISVILLE & N. R. CO. v. CONASAUGA RIVER LUMBER CO.—153 S. W. (2d), 143.

Eastern Section. March 11, 1941.

Petition for Certiorari denied by Supreme Court, June 14, 1941.

James B. Wright, of Knoxville, and Jones & Davis, of Athens, for the Railroad Company.

Phil B. Whitaker, of Chattanooga, for Conasauga River Lumber Co.

McAMIS, J. The L. & N. Railroad Company instituted this action to recover compensation for the use of approximately three thousand tons of rails and splices used by the defendant Conasauga River Lumber Company to build thirty-five miles of railroad into its timber lands located in Polk County, Tennessee, and in the State of Georgia.

Practically all of the rails and splices were delivered to defendant's predecessors. They were in place in 1922 when defendant by contract with the Railroad Company assumed the obligation of its predecessor, Tennga Lumber Company, and agreed to pay for the use of said material the sum of $1.50 per ton per annum. This contract expired on March 20, 1932. Other contracts, providing for an annual rental of $1.50 per ton, were entered into both before and after the contract just mentioned but, as we understand, all of these contracts except one covering a small consignment of rails expired on the same date as the contract of 1926. All of these contracts provide for an annual rental of $1.50 per ton per annum, all of which was paid by defendant during the contract period. Defendant, however, continued to use the material after the expiration of the contract period on March 20, 1932, until sometime during the year 1938. The Chancellor sustained defendant's insistence that during this period of approximately six years it is bound only for a reasonable compensation and not the rate of compensation as fixed by the contracts.

The Chancellor adopted as the actual value of the rails and splices on March 20, 1932, the value of $15 per ton at which they were carried on the books of the Railroad Company and allowed a recovery of 5% per annum on the value thus fixed or 75c per ton per annum. From this finding and the decree based thereon, the Railroad Company appealed and insists that the Chancellor erred in not holding the Lumber Company liable for the compensation fixed by the contracts of $1.50 per ton per annum or, if based upon the reasonable value of the use of said material, in not fixing as a reasonable compensation $1.50 per ton per annum.

The Chancellor appears to have recognized the doctrine of an implied continuation or renewal, subject to the same terms and conditions as contained in the original contract, where the bailee continued in the possession of the subject of the bailment after the expiration

of the agreed term, but held that whether or not in a given case the doctrine is to be applied depends upon the circumstances and equities of the case. It was found that the circumstances under which the bailee continued to hold over pending negotiations for a new contract at a lower rate rendered inequitable the imposition of the agreed rate of compensation of $1.50 per ton per annum after the expiration of the contract.

.. In reviewing this holding of the learned Chancellor, the provisions of the contract with respect to the disposition of the property bailed at the expiration of the term must be kept in mind. Looking to the contract, it is noted that, while the bailor had the right to enter upon the premises of the bailee and remove the property at the expiration of the term, charging the expense of such removal to the bailee, this right was to be exercised only in event the bailee failed to discharge its primary obligation to load the materials on cars ready for delivery to the bailor.

The proof shows that before the expiration of the contract period the Lumber Company requested a reduction in the payments due under the contract. This request was refused and the Lumber Company continued to pay the agreed rate, threatening, however, to return the rails and splices and abandon its operations. This occurred in the summer of 1931 before the expiration of the contract on March 20, 1932.

Correspondence ensued by which the Lumber Company sought a reduction and the Railroad Company declined to make a reduction insisting upon payment of the account at the contract rate. This was declined and the present suit was instituted on March 6, 1938.

There is some proof that officials of the Lumber Company expected to receive a deduction as a result principally of an agreement of an agent of the Railroad Company to recommend to officials of the Railroad Company that the charges for the use of the materials be reduced but, as shown by the correspondence, the Lumber Company was repeatedly advised both before and after the expiration of the contracts that if it kept the material it would have to be upon condition that it pay $1.50 per ton per annum. One of the letters referred to shows clearly that the Lumber Company was fully conscious of the refusal of the Railroad Company to accept less than this amount and, with this knowledge, agreed to make payments "upon account" in lumber.

In this State the rule is well settled that where the relationship of landlord and tenant exists by contract for a fixed term and subject to fixed conditions and an agreed rental and the tenant holds beyond the term, the tenant continues to occupy the relation of tenant toward his former landlord on the same terms as existed under the contract of lease. Wilson v. Alexander, 115 Tenn., 125, 88 S. W., 935, and

and see earlier cases holding to the same effect including Brinkley v. Walcott, 10 Heisk., 22, to be hereinafter discussed.

In Lewis et al. v. Bringhurst Reid Co., 155 Tenn., 177, 290 S. W., 972, this rule, there referred to as the United States rule, was reaffirmed and extended to hold that the length of time for which the tenant holds over and his reasons for doing so are immaterial and will not be held to defeat the right of election on the part of the landlord to hold the tenant for another like term. These cases, however, all deal with the rights of the parties growing out of a contract of lease of real estate and we do not appear to have a case dealing with the precise subject here under consideration where the relationship is that of bailor and bailee and the subject-matter of the contract personal property.

We agree with the Chancellor that the relationship between the parties in this case was that of bailor and bailee rather than landlord and tenant and the question to be determined is whether or not the retention of possession by the bailee operates as a renewal or continuation of the original contract of bailment subject to the same terms and conditions fixed by the contract.

One authority states the rule as follows:

"Termination of Relations. If the contract of bailment is limited as to time, the bailment is ended at the expiration of the time, and the bailee must either redeliver the property or dispose of it as the owner directs or excuse his failure, *and if he does not the owner may hold him for conversion, or as having renewed the bailment on the same terms.*" (Italics ours.) Elliott on Contracts, section 3005.

A more recent statement of the rule is as follows:

"In a bailment for a definite term, while it is the general rule that termination takes place by lapse of time, and unquestionably the bailment ends absolutely if the bailee returns the property or accounts for it as is his duty, nevertheless, if at the expiration of the appointed time he does not redeliver the property or excuse his failure to do so, or deny the bailor's right to possession of it, the bailment does not necessarily end as to him; though the bailor has the right to resume possession, he may, on the other hand, consider the bailment as continued or renewed, and while the law of bailments does not, as in the case of leases, imply a renewal of the former contract from the mere naked act of retaining possession, such possession, retained without objection after the expiration of the period originally fixed, in connection with other circumstances, may sometimes be sufficient to establish as a fact that the bailment was continued or renewed upon an implied agreement of the parties." 6 Am. Jur., 422, section 334.

The only authority cited in the footnotes is the case of In re Parsell's Estate, 184 Mich., 522, 151 N. W., 714, Ann. Cas., 1917A, 1160, which we have examined. The author of the opinion in that case cites Elliott on Contracts, supra, and Chamberlain v. Pratt, 33 N. Y., 47.

The question of retention by the bailee "without objection" does not appear to have been involved in the Parsell case, there being no proof either way upon that question; nor does there appear to have been anything more than "a mere naked retention of possession," yet the bailee was held liable after the expiration of the contract for the return upon the property fixed by the bailment contract while it continued.

The rule of an implied renewal from the mere fact of holding over without more, often applied where the relationship of landlord and tenant exists, might result in difficulty of application and hardship upon the bailee as, for example, where the original contract of bailment covers a period of many years and the personal property involved in the bailment is greatly depreciated in value and less suitable for use at the end of the period and may not be needed by the bailee for more than a short period of time. However, that is not the question involved in this case. The period during which the bailment should continue beyond the term fixed by the contract is not in dispute and the only question at issue is the compensation to be paid by the bailee for the use of the property while it used it after the expiration of the contract period. As to that question there seems to us no difference in principle whether the relationship be that of landlord and tenant or bailor and bailee. As to the compensation to be paid, the only question here involved, the suggested distinction becomes a mental phantom.

We think this case is ruled in principle by the case of Brinkley v. Walcott et al., 57 Tenn. (10 Heisk.), 22, and by the holding in Glascock v. Marmon, 1914, 4 Tenn. Civ. App., 140.

In the first of these cases the tenant held the premises subject to lease contract terminating August 31, 1867, providing for an annual rental of $6,000. On July 20, 1867, the landlord notified the tenant that if he should hold over he would be required to take the premises for the ensuing year at $5,000 payable in monthly installments of $416.66, in advance. The tenant objected to the amount of the rent, stating that it was too high, but did nothing further and held over until September 2, when the first month's rent for September was paid, the tenant stating at the time that $5,000 per annum was too much but that he was willing to pay at that rate until he could obtain another place or would give $4,000 for the whole year. The landlord declined to reduce the rent below the amount stated in the notice of July 20, 1867, and it was held that by holding over the tenant consummated a new contract at the rate of $5,000 per annum.

In discussing the principles here involved, the court said:

"If they (the tenants) did not desire to accept these terms, it was their duty to have vacated the premises before the first of September. If these terms were not accepted, the plaintiff was upon that day entitled to the possession. And the mere fact that with this notice they

continued to hold possession after that date, in the absence of a different agreement, is sufficient evidence that they accepted the lease for the next year upon the terms proposed by the plaintiff, and the contract thereby became complete. That, at the time these terms were proposed, they said that the rent was too high, and did not then say they would accept the terms does not change the result. They were notified by the plaintiff that if they held over, he would treat this as an acceptance of his terms. They did hold over, and it is this fact which constitutes their acceptance of the contract.''

Glascock v. Marmon, supra, involved the liability of a tenant for rents after the termination of the lease upon the theory of a hold over. It appears that the tenant had demanded that the landlord make certain repairs before he would agree to renew the lease for another term. The landlord failed to make the repairs and the tenant continued in possession beyond the term of the original lease. It was held that the premises, at the end of the term, belonged to the landlord to do with as he pleased and that the tenant, having continued in possession with knowledge of the refusal of the landlord to make the repairs, became, nevertheless, liable for rents during another term. And see notes 109 A. L. R., 203, 204.

In this case, even if the original contract be construed as an agreement to accept 5% of the value of the materials during the contract period, the Lumber Company was put upon notice that if it continued to use the materials, it would be required to pay $1.50 per ton per annum. The period of the bailment having expired, the Railroad Company was at liberty to demand an amount which it believed would compensate it in full. The Lumber Company, on the other hand, was at liberty to refuse to pay the compensation demanded and return the property as it agreed to do in the original contract. The correspondence reveals that the Lumber Company was notified that the Railroad Company would not waive the amount due it during any period the rails might not be in use by the Lumber Company. The Lumber Company, having retained and used the materials with notice of the conditions exacted by the Railroad Company, we think the learned Chancellor was in error in holding that the circumstances this case forbid the application of the rule requiring the bailee to continue paying the amount fixed by the contract.

It results that the decree below must be reversed and a decree rendered here for the amount due at the rate of $1.50 per ton per annum. Costs will follow the decree.

On Petitions to Rehear.

On Petition of L. & N. Railroad Co.

The L. & N. Railroad Company has petitioned the court for a rehearing insisting that it was error not to allow interest upon

each installment due it for the use of the rails and splices from the date when such installments fell due and payable.

One of the assignments complains of the action of the Chancellor in declining to allow interest but it does not appear that this assignment was supported by any portion of the brief filed by the Railroad Company. It is a familiar rule that assignments made and not supported by brief will be treated as waived. However, we think the allowance of interest was a matter within the discretion of the Chancellor. Johnston v. Cincinnnati, N. & O. R. Co., 146 Tenn., 135, 240 S. W., 429.

If it be said that the Chancellor did not render a decree upon the basis of the one rendered in this court and, therefore, it is for this court, trying the case de novo, to exercise its discretion upon the question of the allowance of interest, we still think interest should not be allowed upon the recovery. For a part of the time for which the Lumber Company has been charged by our former opinion, the materials were not in use, and the Railroad Company, to some extent at least, was the beneficiary of the continued use of the materials in getting out lumber for shipment over it lines. Of course, it must be said that the presumption is that the Railroad Company earned all of the freight revenue derived from this source but we are of opinion, nevertheless, that the court should consider this phase of the relationship between the parties in passing upon the allowance of interest. Upon the whole case, we think interest should be denied except from the date of the filing of the bill. The petition of the Railroad Company is accordingly denied.

On Petition to Rehear of the Conasauga River Lumber Co.

The Conasauga River Lumber Company has filed a petition to rehear seeking an affirmance of the decree because a stipulation of counsel with respect to correspondence referred to in our original opinion was not preserved by bill of exceptions. The case of Rose v. Brown, et al., 176 Tenn., 429, 143 S. W. (2d), 303, decided by the Supreme Court on October 5, 1940, is cited in support.

In the Rose case an appeal was perfected from a decree based upon oral testimony as well as depositions and a stipulation of counsel. In this case no oral testimony was introduced and the case was heard regularly as a chancery cause upon depositions. It is true a stipulation was filed in lieu of introducing the correspondence by deposition but this, we think, does not change the rule that depositions, exhibits and documentary evidence in a case so heard constitute a part of the record without being preserved by bill of exceptions. Code, Section 8983; Hill v. Bowers, 51 Tenn. (4 Heisk.), 272.

Some reference is made to the fact that the stipulation was never marked filed. The decree of the Chancery Court shows that it was considered without objection as a part of the record as were the letters attached to it. It is now too late to raise the question that

the stipulation and attached correspondence never became a part of the record because not marked filed by the Clerk and Master. Gibson's Suits in Chancery (Higgins and Crownover), sec. 179.

It results that both petitions to rehear are denied and judgment will be entered in accordance with our former opinion for the amount indicated with interest from the date of the filing of the bill.

Ailor and Portrum, JJ., concur.