### Edward I. Rose vs. John Congdon.

JUNE 27, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This action of trespass and ejectment was heard in the superior court by a justice sitting without a jury. He rendered a decision for the defendant, and the

plaintiff duly prosecuted to this court his bill of exceptions containing the single exception to that decision.

It appears from the evidence that the defendant, by a written lease dated August 3, 1942 and recorded in the records of land evidence in Providence on September 17, 1943, rented from the lessor Cecile Tieman for a term of two years from October 1, 1942 to September 31, 1944, which date the parties agree should be considered as being September 30, 1944, the premises in dispute, namely, a single family dwelling house, with garage, located on Cole avenue in the city of Providence. In the lease the annual rental was set out as being $960 for each year, payable in equal monthly installments of $80. The lease also contained the following provision in respect to the defendant's right to a renewal thereof: "with option to renew lease for further term of two years, with adjusted Rent In the event the Lessor does not wish to sell the above property and in case of sale at any time during the term or extension of said lease, the lessee will have option to purchase the property at the same price to be paid by a prospective buyer."

The lessor, Cecile Tieman, died testate in 1944 prior to the expiration of the above lease, leaving a minor son Robert H. Tieman, then about sixteen years of age, who was apparently her sole heir. In August, 1944 the defendant called the attorney for the estate of Cecile Tieman on the telephone and stated that he wished to exercise his option to renew the lease of the above-described premises and sought advice from the attorney as to what to do. The attorney made some suggestions but in substance stated that the affairs of the estate were in an uncertain condition and that it was not known what disposition would be made of the property in question.

On August 25, 1944 the defendant wrote letters to the executrix of Cecile Tieman's will and to Robert H. Tieman stating in each that he, the defendant, exercised his option to renew or extend the lease for a further term of two years at the same annual rental. Thereafter, on September 11,

1944, the attorney for the Tieman estate wrote the defendant that his lease could not be renewed as it was necessary to sell the property to meet a claim against the estate, and asked the defendant if he desired to make an offer for the premises. Also, on September 16, 1944, the attorney wrote the defendant in regard to showing the premises to prospective purchasers. On September 25, 1944, the attorney and the defendant talked on the telephone about the sale of the property. In this conversation the defendant continued to take the position that he had renewed the lease and that he would resist ejectment proceedings. On September 30, 1944 the two men again discussed over the telephone the sale of the property. The attorney told the defendant that there was a *bona fide* offer of $10,000 for the premises and expressed a willingness to make a sale to the defendant for that amount. The latter, however, stated that he would not pay that sum, and suggested that if a sale was made it be made subject to his lease. On that same day the defendant wrote the attorney reviewing the travel of the situation and stating that he considered that he held the extended lease for the term expressed in the option.

Thereafter the defendant remained in occupation of the premises and no attempt was then made to eject him therefrom. He continued to pay the same monthly rental to the attorney for Cecile Tieman's estate as he had theretofore paid since her death. These payments were accepted by the attorney without any reservations or conditions. In June, 1945, pursuant to authority obtained from the probate court of the city of Providence, the property was sold to a Mrs. Lovett for $10,000. Thereafter the defendant paid rent to her in the same amount and manner as he had to the attorney for the Tieman estate. In the latter part of August, 1945, the present plaintiff Rose purchased the property from Mrs. Lovett, claiming to have no knowledge of the lease involved herein.

In a short time the plaintiff called on the defendant to ascertain when he would be willing to vacate the premises.

and was told by the latter that he was claiming occupancy under the lease as renewed. The plaintiff accepted the regular monthly rent from the defendant without reservation and condition, and apparently continued to do so up to the time the instant writ was issued. After his interview with the defendant the plaintiff, on September 12, 1945, applied to the Office of Price Administration for a certificate so that he could commence ejectment proceedings against the defendant. This certificate was issued October 3, 1945 containing the condition, however, that no action thereunder be taken until December 12, 1945, which was three months after the date of the filing of the plaintiff's application. The plaintiff then retained the attorney who had been representing the Cecile Tieman estate, and on January 15, 1946 said attorney personally served the defendant with a notice terminating his tenancy of the premises at the end of that month. The present writ is dated February 1, 1946.

The defendant contends that he exercised his option and renewed his lease for an additional two years and, therefore, that he is entitled to remain in the property until September 30, 1946. He further contends that, if he was not successful in renewing his lease, at its termination he held over his term as a tenant from year to year; that on October 1, 1945 he started his second holdover from year to year and that he is entitled to possession of the property until September 30, 1946 as a tenant from year to year, having received no sufficient notice to vacate under such conditions.

On the other hand, the plaintiff maintains that the provision in the lease in respect to giving the defendant an option to renew it was, under the law, unenforceable; that at the termination of the lease the defendant, at most, was holding over his term as a tenant from month to month; but that if it should be considered that he was a tenant from year to year during the first year after the expiration of his original lease, the plaintiff, who was his landlord when the second year started on October 1, 1945, plainly elected, as he had a right to do, to consider the defendant a tenant

from month to month thereafter, and that, so considered, he was given a valid notice to vacate.

The case was rather briefly tried. At its conclusion the trial justice in deciding for the defendant held "that this tenant became a tenant from year to year, and that his second term under that holdover is now current and will expire September 30, 1946. This landlord will have to give him three months expiring on that date."

The plaintiff's claim that the option to renew in the instant lease was unenforceable by the defendant is based on the holding in the case of *Vartabedian* v. *Peerless Wrench Co.*, 46 R. I. 472, that a somewhat similar option to renew a lease was void for uncertainty and indefiniteness. For the purpose of the present case we will assume, without deciding, that the plaintiff's claim in this connection is correct, and that the defendant is not properly in possession of the property in question under a renewal of his original lease.

The finding of the trial justice that upon the expiration of the original two-year lease on September 30, 1944 the defendant became a tenant from year to year by holding over his said lease, he and the landlord having made no new contract, in our opinion is clearly supported by the evidence. For example, the landlord at that time did not treat the defendant as a trespasser, as it was his option to do, and made no attempt to eject him from the premises but accepted him as a tenant thereof. In fact the representative of the Tieman estate accepted from the defendant without condition or reservation rent based on the regular yearly rental payable monthly as set out in the lease; and also collected from the defendant certain charges for the use of water as set out in the lease.

This was the conduct of both the representative of the Tieman estate and of the first purchaser Mrs. Lovett. As a result, the defendant remained in quiet possession of the premises without any new contract for approximately eleven months after September 30, 1944 before any question

was raised as to his status. Granting that the landlord has the election as to how he would treat the occupant of the premises holding over his lease—see *Rimnik Corp.* v. *Wallace*, 61 R. I. 282—the evidence that the representative of the Tieman estate considered the defendant to be a tenant from month to month was not made known to the tenant so as to define the type of tenancy and therefore did not require the conclusion that he was a month to month tenant.

Then in the latter part of August, 1945, shortly before another occupation year was about to start, the plaintiff became the defendant's landlord. The plaintiff claims that as such purchaser and new landlord he also had the election in his own right as to how he would treat the defendant's occupancy of the property, citing 16 R. C. L. 1167, 1168. Assuming this to be true, it is plain that the plaintiff elected to treat the defendant as a tenant of some kind. Did the evidence support the plaintiff's contention that his election showed such tenancy to be one from month to month? The trial justice found otherwise, deciding that when the present ejectment proceedings were finally instituted the defendant was lawfully in his second year as a tenant from year to year holding over his term.

Upon consideration of the evidence and reasonable inferences of a conflicting nature which could be drawn therefrom we cannot say that this finding of the trial justice was clearly wrong. As showing how he elected to treat the defendant's occupation of the premises the plaintiff emphasizes the evidence in relation to his early dealings with the Office of Price Administration looking toward ejectment proceedings against the defendant. On the other hand, the latter cites the payment of rent by him to the plaintiff and other facts and circumstances in connection with their conversations relating to the occupancy and the giving up of possession of the property as supporting his contention that he was again a tenant thereof from year to year.

The burden was on the plaintiff to show not only that

some election was made by him at the start of the second year of the holding over, *viz.*, October 1, 1945, but also to show that such election to treat the defendant as a tenant from month to month was in some manner made known to him within a reasonable time. We find an entire lack of evidence on this latter point. It does appear in evidence, however, that the plaintiff, after he became landlord, accepted from the defendant several months' rent which was consistent with the yearly rental provided for in the lease. These rents were taken by the plaintiff without any reservation, condition, or understanding with the defendant as to their application. In these circumstances it cannot be said that the only reasonable inference was that the defendant was a tenant from month to month and not a tenant from year to year.

In support of his position that mere holding over after a term for years without a new contract and the payment of rent does not necessarily establish, in favor of the tenant, a tenancy from year to year, the plaintiff cites to us several cases, among them *Rourke* v. *Fraser*, 43 R. I. 71; *Greene* v. *Walsh*, 43 R. I. 416; *Arnold Realty Co.* v. *W. K. Toole Co.*, 46 R. I. 204. Each of these cases, however, shows peculiar facts and circumstances that are not present in the instant case. Such facts apparently led the court to hold in those cases that the taking of rent by the landlord was not necessarily determinative in establishing a tenancy from year to year. The cases cited are therefore distinguishable from the present case and, in our opinion, do not require reversal of the decision here.

The plaintiff's exception is overruled, and the case is remitted to the superior court for the entry of judgment for the defendant on the decision.

*Aisenberg & Joslin, Alfred H. Joslin,* for plaintiff.

*Greenough, Lyman & Cross, Owen P. Reid,* for defendant.