## ALICE PIPE & SUPPLY CO. v. HARROUN.

### No. 11617.

Court of Civil Appeals of Texas.
San Antonio.

June 27, 1946.

Rehearing Denied July 17, 1946.

Lon D. Herbert, of Alice, for appellant.

S. Truman Phelps, and S. T. Phelps, both of Laredo, for appellee.

NORVELL, Justice.

Plaintiff below is the appellant here. The parties will be designated as in the trial court. The findings of fact and conclusions of law of the trial judge constitute a partial statement of the case and are as follows:

"Findings of Fact.

"1. On the 28th day of November, 1944, the defendant from Laredo, Texas, called the plaintiff at Alice, Texas, over the telephone and sought to rent from plaintiff a quantity of drill pipe for use in drilling a certain well in Zapata County, known as the Lacey well, stipulating that he wanted the drill pipe for a period of only twenty-five days. Plaintiff agreed that he would rent him the drill pipe for such period of time for a consideration of $300.00 cash in advance because the defendant had no credit standing with plaintiff whatsoever, the defendant to accept delivery of the drill stem at Alice, Texas. Defendant sent a truckman for the drill stem, paid plaintiff the $300.00 in cash, and the drill stem was hauled to the well site and there used by the defendant for less than the period for which it was rented.

"2. There was no written agreement for the rental of the drill pipe and no other conditions were made than as stated in Finding No. 1, herein. Under date of November 28, 1944, plaintiff mailed the defendant an invoice, reading in the body thereof as follows: 'Rental Only. (40 jts) 1222.6' 3½" OD HAR drill pipe—from 11/28/44 to 12/22/44—25 days at .01 per ft per day—$305.75. Pd $300.00, bal. $5.75 Thanks.'

"3. About the month of February, 1945, this drill pipe was removed from the well site in Zapata County by the National Sup-

ply Company and stored in its yards at Hebbronville by error and remained there until March when it was trucked from that place to the yards of plaintiff at Alice, Texas, the plaintiff paying the trucking charges thereon in the amount of $81.25, such payment being made on or after the date of delivery, or March 18, 1945.

"4. Upon the delivery of the drill pipe to the plaintiff a number of joints thereof were found crooked and plaintiff had the same straightened at a cost of $50.00.

"5. Four joints of the drill pipe were lost or misplaced and such loss represented the reasonable market value of $1.25 per foot, or a total of $151.37.

"6. Defendant ceased using the rented drill pipe prior to the 22nd day of December, 1944, the date of expiration of his rental contract, and had such drill pipe stacked at the well site. He gave orders to have such drill pipe hauled back to plaintiff but said orders were not carried out and the pipe was not moved from the well site until February, 1945, when the National Supply Company moved it by mistake to Hebbronville.

"7. The plaintiff knew the location of the well and could have sent for the drill pipe at any time after the expiration of the rental contract.

### "Conclusions of Law.

"1. The term for which the drill stem was rented being fixed at twenty-five days, and no provision having been made for a longer period, or rental price therefor, the defendant could only be held for the return in good condition, subject to a reasonable use and wear thereof, of said pipe to the plaintiff.

"2. The defendant should be held to pay plaintiff the cost of return transportation of said drill pipe, to-wit: $81.25 with 6% interest from March 18, 1945, to the date of judgment.

"3. The defendant should be held to pay plaintiff the cost of straightening the several joints of said drill pipe incurred by plaintiff, to-wit, $50.00 with interest at 6% from April 1, 1945, to date of judgment.

"4. The defendant should be held to pay plaintiff the reasonable market value of four joints of said drill pipe lost, $151.37, with interest at 6% from December 28, 1945."

It is undisputed that plaintiff prepared and sent to defendant four separate invoices covering the period of time from December 22, 1944, to March 19, 1945. The charges made covered rentals upon the drill pipe involved for a period of eighty-four days and were calculated upon a rental of one cent per foot per day upon 1222.6 feet of 3½ inch O.D. drill stem pipe. The aggregate amount of these invoices was $1,026.98.

In our opinion, the trial court erred in refusing to allow plaintiff a recovery of this item.

▆▆▆ Under the trial judge's findings and the undisputed evidence in this case, the defendant, upon the termination of the contract of bailment, on December 22, 1944, was obligated to return the drill pipe to the plaintiff. "The obligation to return the property bailed at the expiration of the period of bailment is implied by law from the contract of bailment itself, of which it is an essential feature, and need not be stipulated expressly." 144 A.L.R. 1024.

In this case there is no evidence of an agreement which would relieve defendant of his obligation to promptly return plaintiff's property upon the expiration of the contract of bailment. The facts here differ from those of Bettison v. Dauchy & Bryant, Tex.Civ.App., 7 S.W.2d 139, cited by defendant, where "the jury found that it was agreed by appellant that appellees could keep the (drilling) rig until it was sold and that he would be charged with payment only during the time the rig was actually being used."

In Fast Bearing Company v. Koppers Company, 181 Md. 203, 29 A.2d 289, 290, 144 A.L.R. 1022, the Court said: "The question is whether the trial court was in error in allowing only $4 per day for seventy days, thus reducing the claim to a quantum meruit. In this holding we think the trial court was in error, since in our opinion a bailee, the bailment having ended, who continues to hold and use the goods does so under the original agreement. In other words he is in a position comparable

to that of a tenant holding over after the expiration of the term. (Citing authorities.)

"The origin of this well settled rule seems to have been in the reluctance of courts to construe as a tort what could be justified as a contract, and its existence is fully justified as not allowing a bailee to take advantage of his own wrong. As suggested in appellant's brief, our theory of legal morality does not permit a bailee to demand that what may be given a lawful effect must be held tortious."

The analogy between one holding the property of another after a contract of bailment has expired and one holding over as a tenant after the expiration of the term, was pointed out and made the basis of decision by this Court in Ward v. Bruce, 290 S.W. 887.

The mere fact that defendant did not use the pipe after December 22, 1944, for actual drilling purposes will not relieve him of liability. He did not return the property to plaintiff, as he was obligated to do, but, on the contrary, left it upon the drill site until February of 1945, when it was hauled to Hebbronville by mistake. This resulted directly from defendant's failure to abide by and carry out his contractual obligations.

■ Nor do we believe that the failure of plaintiff to send for the drill pipe while it was situated at the well site deprives him of his right to compensation. After all, it was the duty of the defendant to return the property to plaintiff. Defendant was advised that plaintiff was making a charge of one cent per foot of pipe per day from and after December 22, 1945, in accordance with the price agreed upon for the original twenty-five day period. Nevertheless, defendant wholly failed to return same and is in no position to contend that he is not liable for the charges made. Luling Oil & Gas Co. v. Edwards, Tex.Civ.App. 32 S.W.2d 921.

We do not agree with the trial court's first conclusion of law. The judgment will be reformed so as to allow plaintiff a recovery upon the item mentioned. The amount of the judgment awarded plaintiff will be increased from $298.85 to $1,382.31, said amount to bear interest from January 7, 1946 (the date of the judgment below), at the rate of six per cent per annum.

We have concluded that a reversible error is not disclosed by plaintiff's point complaining of the failure of the trial court to render judgment against the sureties upon defendant's replevy bond or to foreclose a writ of attachment.

In his second amended petition upon which he went to trial, plaintiff pleaded that he had caused a writ of attachment to be issued and levied upon certain personal property belonging to defendant, "and defendant has replevied said property by a replevy bond, as more fully appears by the papers on file in this case." He prayed for judgment against defendant "as well as the sureties on defendant's replevy bond."

Judgment was rendered on January 7, 1946.

On January 14, 1946, the plaintiff filed an instrument which is referred to as a trial amendment praying that "in the event the so-called Replevy Bond taken by the Sheriff of Bexar County * * * when the same is filed among the papers of this case, not be in statutory form * * * then, in that event," a foreclosure of the attachment lien be ordered.

The trial court on the 16th of January, 1946, entered an order directing the clerk to forward the original writ of attachment to the Sheriff of Bexar County so that the return thereon could be corrected.

An amended and corrected return was filed in the court below on February 2, 1946.

A replevy bond is shown in the transcript which discloses that it was approved by the Sheriff of Bexar County on January 31, 1946, "in lieu of bond filed and approved on July 18, 1945."

Apparently, the original writ of attachment and replevy bond were not on file among the papers in the case when judgment was rendered, on January 7, 1946.

■ Despite the various proceedings had after rendition of judgment with reference to the trial amendment, the officer's return on the writ of attachment, and the replevy bond, plaintiff filed no motion in the trial court praying for an amendment or correction of the judgment so as to allow him a

recovery against the sureties on the replevy bond or a foreclosure of an attachment lien. For this reason, if for no other, he is not entitled to this relief by direction of an appellate court.

The judgment of the trial court will be reformed in the manner indicated heretofore. As reformed the judgment will be affirmed.

Reformed and affirmed.