DECISION
This case was tried before the Court, jury-waived.[1]
Fiore Concrete Products, Inc. ("Fiore") produced and supplied manholes pursuant to a contract with Defendant, John Rocchio Corporation ("Rocchio"). Rocchio failed to pay for all of the manholes which were supplied, and claimed some were defective. At trial, Fiore established an amount due of $26,542.73, after several returns and other credits.
 Findings of Fact
Mr. John Rocchio, the president of the Defendant Corporation, established that his company entered into contract to purchase a quantity of manholes[2] for several sewer projects his company had undertaken in Warwick and nearby communities. He acknowledged that the company received manholes from Fiore which were not paid for. For these deliveries, Rocchio received invoices totaling $26,542.73, which were never paid.[3] Mr. Rocchio alleged these *Page 2 
invoices were for defective products, although some were installed and some were discarded. When Rocchio failed to make timely payment, Fiore filed claims against the surety bonds written by RLI Insurance Company. These bonds were posted to protect the interests of the local community for liability for loss in the construction of the sewer projects.
Mr. Antonio Duarte, the foreperson for Rocchio on a Conimicut project in Warwick, visually inspected each of the manholes upon delivery from Fiore, returning those he discovered to be defective on receipt. Those returned manholes were removed from the billings and are not at issue for this trial. All other manholes were installed, one at a time. Most of the deliveries were made in September and October, 2002. Mr. Duarte explained that there was a problem with the first manhole installed as it did not close properly. As the installation continued, he did not see the mastic (a sealant) seep out as the boots (connection joints to other pipes) were connected. He informed Mr. Rocchio who instructed Mr. Duarte to proceed with installation and to do the `best you can' to continue installation. The manhole, and manholes subsequently installed, were backfilled to the road level.
Manholes which were installed continued to leak, though they were designed to not leak. After two joints leaked on the first manhole, and pumps were used to keep them dry, Mr. Duarte again informed Mr. Rocchio who instructed Mr. Duarte to use waterblock (a hydraulic cement). Still, the leaks continued.
Mr. Duarte used the same installation process on the second manhole and encountered the same problem: joints did not compress the gaskets sufficiently. The problem continued as all 40 manholes in Mr. Duarte's project were installed. Mr. Duarte's installation team continued to move pumps, installing one manhole at a time, and were fully aware of the ongoing problems. After all 40 manholes were installed, water was leaking into about 20 or 25 of the manholes at *Page 3 
the seams for the boots. Mr. Duarte recognized this as the manholes were installed, and acknowledged that he would have returned any manholes he desired before installation. He did not inform Fiore Concrete of the defects, but when he told Mr. Rocchio, he was told to "keep going."
Gioaccino Manna was the foreperson for Rocchio on the other Conimicut project. He supervised installation of 30 to 35 manholes supplied by Fiore. He encountered difficulty with the first manhole he installed as the boot did not seal. Mr. Rocchio instructed Mr. Manna to continue and "do the best you can." Of the 35 manholes Mr. Manna installed, eight leaked at their boots and 26 or 27 had leaking joints. Mr. Manna never spoke with Fiore. He testified that other manholes, supplied by Fiore Concrete Products, Inc., functioned properly. Mr. Manna did not note the defects or gaps on his daily reports, but he did inform Mr. Rocchio.
Mr. Salvatore Calise of Rocchio then testified. His duties were to follow the installations and perform water infiltration tests. These included both air testing and visual tests. He reported to Mr. Rocchio that 40 to 45 leaks continued, which he would attempt to repair. Mr. Calise used waterplug on the rings and boots but his repairs were minimally successful. New England Pipe Cleaning was then called to resolve the leaks.
Mr. Roland Fiore, the president of the plaintiff-supplier established that his company entered into a blanket purchase order with Rocchio. The Rhode Island Department of Transportation required many specifications for the manholes. Fiore maintained a stock of manholes for its sales. The manholes were then modified and supplied pursuant to project drawings submitted by the customer. In November of 2002, after many of the manholes had already been set, Mr. Fiore received a letter complaining about the manholes. Fiore dispatched an engineer to the site who determined that the manholes met the specifications on the orders. *Page 4 
Fiore concluded that different boots and gaskets should have been used for this type of installation. When Rocchio failed to pay for what was ordered, an argument arose. When Rocchio countered by subtracting "back charges" $62,551.94 in repairs from the bills, Fiore cut off shipments to Rocchio. Mr. Fiore also established that in the middle of the ongoing installation, Rocchio's staff asked that a certain waterproofing sealant not be sent. He found this to be odd as the engineer specified hydrocide sealant for use.
Mr. Rocchio saw the manholes delivered, already coated with some mastic. He acknowledged he saw some leaks at the outset of installations. Timeliness of the installation was important to his company as there was a $10,000 penalty if the installations were late. Accordingly, he did not believe the installations could stop. When certain manholes did not meet specifications, Rocchio mixed and matched from the inventory that had been received to see what would fit. Rocchio decided to continue installing, knowing the defects. After three manholes did not function, Rocchio informed Fiore, who sent employees to attempt to fix the leaking. Although the leaking continued, Rocchio proceeded to install additional manholes. In late 2003, Rocchio enlisted an outside contractor, New England Pipe Cleaning, who repaired the leaks with a special epoxy. Mr. Rocchio testified that his company was "under intense pressure from the city as he was already nearing the end of the deadline for installation."
Apart from the Warwick installations, Rocchio produced no evidence concerning the installation of the sewers in East Greenwich or Mattapoisset. Although Fiore established that it shipped manholes to these localities pursuant to the purchase orders with Rocchio, there was no explanation of why those bills were not paid.
Fiore commenced this action in November 2003, for the payment of the invoices due. Rocchio counterclaimed for the costs it incurred to repair the leaks. *Page 5 
 ANALYSIS AND CONCLUSIONS OF LAW
1. A binding contract existed.
The parties acknowledged that they were each bound by the purchase agreement. They further agree that, pursuant to the contract, manholes were ordered as specified and delivered. Agreed terms are a prerequisite to a binding contract. "In addition to mutual assent, a bilateral contract requires mutuality of obligation, which is achieved when both parties are bound legally to the making of reciprocal promises."Centreville Builders, Inc. v. Wynne, 683 A.2d 1340, 1341 (R.I. 1996). "For the parties to form an enforceable contract, there must be an offer and an acceptance. Each party must have and manifest an objective intent to be bound by the agreement. For either an express or implied contract, a litigant must prove mutual assent or a meeting of the minds between the parties." Opella v. Opella, 896 A.2d 714 (R.I. 2006). "This Court has established that for parties to form a valid contract, each must have the intent to be bound by the terms of the agreement . . . For any contract to be enforceable however the parties must manifest their object intent to be bound by their agreement." Weaver v. American PowerConversion Corporation, 863 A.2d 193, 198 (R.I. 2004). "An essential element to the formulation of any true contract is an `intent to contract.'" Bailey v. West, 105 R.I. 61, 66, 249 A.2d 414, 417 (1969). Here, all of the necessary elements of a contract existed and each of the parties was bound by the contract. *Page 6 
2. Defects were not established.
While the parties established the existence of the purchase agreement, the orders and the deliveries, evidence concerning defects was scant. The Rocchio forepersons who supervised the initial installation, established that the manholes or their boots leaked after they were installed. Neither the forepersons, the other witnesses, nor any experts, explained precisely why the manholes leaked.
It is possible that the manholes leaked because the boots were not fastened to the manholes properly, though this was never established. It is possible that the manholes were not constructed according to specification, though this was never established. It is possible that the manholes were installed improperly, though this was never established. It is possible that the manholes were designed improperly (the construction specifications were inappropriate) though this was never established. The Court is left to speculate on what went wrong. Neither party established the existence of a defect, [4] nor a deviation from what was ordered.
Rocchio also alleges that Fiore, by delivering defective goods, breached its implied warranty of fitness for a particular purpose. G.L. 1956 § 6A-2-315. This warranty applies when "the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."Ibid. Here, written specifications were given for each piece. It has not been established that the specifications were proper, that the manholes were not formed to the specifications, or that the goods were defective for their intended use. As our Supreme Court held on another type of implied warranty
 without establishing that the cart left defendant's control in a condition below "fair average quality" or unfit for the purpose of carrying goods, plaintiffs are unable to meet their burden of *Page 7 
proving that the defendant breached its implied warranty . . . Thomas v. Amway Corp., 588 A.2d 716, 719 (R.I. 1985).
Because it has not been established that the manholes supplied were defective upon delivery, as a result of the workmanship of Fiore, Rocchio failed to show that the resultant leaks were caused by Fiore or that Fiore bore responsibility for them. A breach by Fiore has not been shown.
2. Rocchio failed to mitigate its damages.
Though Rocchio encountered uncontrollable leaking with the first manholes installed, it continued the installations undaunted. Each of the installation teams revealed problems with the manholes and reported it to their superiors. The decision to continue was made because of the need to finish the project in short order.
An aggrieved party "has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." Tomaino v. ConcordOil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998) (citingBibby's Refrigeration, Heating Air Conditioning, Inc. v.Salisbury, 603 A.2d 726 (R.I. 1992)). The burden of establishing that Rocchio failed to mitigate its damages was rested on Fiore, but Fiore established this by demonstrating that Rocchio knew of the defect, accepted the defect and continued on even when it had an opportunity to return the manholes before installation. Bibby's Refrigeration,603 A.2d at 729.
The Rhode Island Supreme Court discussed the concept of mitigation of damages at length:
 The affirmative defense of mitigation of damages is often referred to as the "doctrine of avoidable consequences." Tomaino v. Concord Oil of Newport, Inc., 709 A.2d 1016, 1026 (R.I. 1998). The law in Rhode Island is well settled that a party claiming injury "has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages." Id. (citing Bibby's Refrigeration, *Page 8 Heating Air Conditioning, Inc. v. Salisbury, 603 A.2d 726, 729 (R.I. 1992)). The law requires reasonable efforts and ordinary care under the circumstances, not "Herculean exertion." Tomaino, 709 A.2d at 1026. When mitigation of damages is at issue the defendant has the burden of proving by affirmative evidence, that the plaintiff failed to adequately mitigate his or her damages. Bibby's Refrigeration, 603 A.2d at 729 (citing Norm Co. v. Cumberland Coal Co., 53 R.I. 228, 229, 165 A. 592, 593 (1933)). McFarland v. Brier, 769 A.2d 605, 610 (R.I. 2001)
Here, Rocchio knew there was a problem with the first manhole installed. The problem continued with almost every manhole as it was installed. The manholes were installed one at a time. Construction never ceased. Replacements were never requested. Instead, Rocchio decided to continue with installation and, apparently, attempted to solve the leaks only after the manholes were installed.
Because Fiore replaced manholes on Rocchio's request prior to installation, any problem could have been resolved early on. If there was a defect (and defects should have been expected after the first few installations) Rocchio could have inspected the manholes further, rechecked the specifications, or simply decided to order from another company. Instead, it continued on, knowing that there would be risk involved with future installations.
Rocchio failed to exercise reasonable diligence or ordinary care in minimizing the extent of its damages. It did not undertake reasonable efforts to stop the harm before it grew worse.
4. Damages.
As Fiore supplied the manholes pursuant to contract and Rocchio has not established any reduction in the amount of the sales price, any defect or any entitlement to a `backcharge' so-called, Fiore is entitled to the full amount billed, or $26,542.73. *Page 9 
 CONCLUSION
Judgment shall enter for the Plaintiff, Fiore, against Defendant, Rocchio, on Count I. Compensatory damages of $6198.69, plus interest and costs are awarded.
Judgment shall enter for the Plaintiff, Fiore, against Defendant, Rocchio, on Count II. Compensatory damages of $3860.04, plus interest and costs are awarded.
Judgment shall enter for the Plaintiff, Fiore, against Defendant, Rocchio, on Count III. Compensatory damages of $16,484, plus interests and costs are awarded.
Judgment shall enter for the Plaintiff, Fiore, against Defendant, RLI Insurance, on Count
IV. Compensatory damages of $10,058.73, [5] plus interest and costs are awarded. The judgment against RLI Insurance is joint and several to the judgments against Rocchio.
[1] While the case was originally filed in Providence County, the Presiding Justice transferred the file to Kent County for trial, pursuant to G.L. 1956 § 8-2-27.
[2] Manholes are long concrete tubes four or five feet in diameter that extend vertically about 20 feet under a street. They provide some access to the sewer or other utility line running beneath the street, and are custom fitted with boots and certain connections.
[3] These invoices were for manholes Fiore supplied for Rocchio's projects in three local communities. See purchase orders and bills, Exhibit 1.
[4] R.I.R. Evid. 702 allows expert opinion testimony of scientific, mechanical, professional or technical nature by someone with special knowledge who would assist the factfinder in its quest for the truth.Corning Glass Works v. Seaboard Surety Co., 112 R.I. 241, 308 A.2d 813
(1973). Minimal expert testimony was submitted herein.
[5] This was the amount prayed for in the Complaint. *Page 1